IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DAVID SEAMAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. **3:18-cv-00833-HEH** |
| | ) | |
| | ) | **TRIAL BY JURY** |
| YOUTUBE, LLC | ) | **IS DEMANDED** |
| | ) | |
| -and- | ) | |
| | ) | |
| GOOGLE, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# <u>COMPLAINT</u>

Plaintiff, David Seaman, by counsel, files the following Complaint against defendants, YouTube, LLC and Google, LLC, jointly and severally.

Plaintiff seeks (a) compensatory damages, statutory damages (three-times the actual damages sustained), and punitive damages in an amount not less than **$3,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from February 23, 2018 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), (c) reasonable attorney's fees in the amount of **$847,500.00** pursuant to Title 42 U.S.C. § 1988, Title 47 U.S.C. § 206 and § 59.1-204(B) of the Code, and (d) court costs – arising out of defendants' deprivation of Plaintiff's rights secured by the First Amendment of the United States Constitution, the laws of the United States of America and Article I,

Section 12 of the Virginia Constitution, defamation *per se*, violation of the Virginia

Consumer Protection Act, and breach of contract.

## I. <u>INTRODUCTION</u>

> You've just done something very few YouTube creators accomplish: You had an astonishing 100,000 people subscribe to your channel.
>
> We know numbers on YouTube can get really big, but we hope you don't lose sight of the reality behind that six-digit milestone. Each and every person who has subscribed to your channel was touched by what you did. They were inspired, or challenged, or entertained.
>
> You made it to this milestone with hard work, perseverance, and — chances are — a healthy sense of humor. What you've accomplished can't be taken away from you. And we'd like to recognize you and all your hard work with this silver play button, a small token of our esteem and respect.
>
> We know you don't do this for rewards. You do it because you have a drive to create and share, and because you've found an audience who cares. Believe us when we say that we can't wait to see what you do next. A million subscribers may seem a long way off right now, but you're closer than you think. And we're rooting for you.
>
> Congratulations.
>
> Sincerely,
>
> *Susan Wojcicki*
>
> **Susan Wojcicki**
> **CEO, YouTube**

1.      David Seaman is a journalist.  He joined YouTube in 2008.  Relying on

YouTube's promise that content-creators would enjoy freedom of speech and expression,

David invested years of his life and substantial human and financial capital to develop

and publish content on YouTube.   He created a YouTube channel called,

"DavidSeamanOnline".   The channel had one central purpose:  to expose, report and

educate viewers on the subjects of pedophilia, human trafficking and "Pizzagate".

2.     Between 2014 and 2017, David published hundreds of videos on these subjects on his YouTube channel.  None of David's videos were censored.

3.     By February 2018, almost 162,000 viewers subscribed to David's channel:



David's videos had over 11,000,800 views.  Under Google's profit-sharing program and as a result of his substantial following, David earned approximately $116,000 per year from the production and publication of videos on YouTube.

4.     David's hard-earned success was duly recognized by the Chief Executive Officer (CEO) of YouTube, Susan Wojcicki ("Wojcicki"), who wrote to David to personally congratulate him on his accomplishments.

5.     Everything changed in late 2017, when Google and YouTube began to mass-censor and systematically purge conservative and independent viewpoints from the YouTube platform.  The Google/YouTube purge received national coverage in the press, *see, e.g.*:

https://dailycaller.com/2018/03/01/youtube-conservative-accounts/;

https://www.breitbart.com/tech/2018/03/01/the-purge-youtube-mass-censors-conservatives-new-right-classical-liberals/;

https://stream.org/google-youtube-facebook-and-twitter-ramping-up-censorship-of-conservatives-is-it-soros-driven/;

https://theoutline.com/post/3550/youtube-bans-conspiracy-theorist-channels-takes-down-popular-gun-videos;

https://www.infowars.com/the-truth-behind-youtubes-purge-of-conservatives/.

6.      David did not survive the purge.  David's videos began to be "flagged" for review.  YouTube claimed that it had "reviewed" David's videos.  Upon "review", YouTube claimed David's videos "violated" YouTube's "Community Guidelines" – the same guidelines that had been in place for years.  YouTube removed videos from the platform and assigned David's channel "strikes".  On February 21, 2018, YouTube removed a video and assigned David a "strike" for reporting about YouTube banning videos about Parkland High School crisis actor, David Hogg:

From: **YouTube** <accounts-noreply@youtube.com>
Date: Wed, Feb 21, 2018 at 5:10 PM
Subject: Your video has been removed from YouTube
To: David Seaman <dseaman@gmail.com>



Hi David Seaman,

As you may know, our Community Guidelines describe which content we allow – and don't allow – on YouTube. Your video "YouTube Hastily Banning Everyone Over Florida Crisis Actor Claims (Kid's Dad=FBI)" was flagged for review. Upon review, we've determined that it violates our guidelines. We've removed it from YouTube and assigned a Community Guidelines strike, or temporary penalty, to your account.

On February 23, 2018, after three (3) strikes, YouTube terminated David's channel, removed and deleted all of his videos, and permanently banned him from the platform. That evening, the "YouTube Team" emailed David as follows:

From: **YouTube** <accounts-noreply@youtube.com>
Date: Fri, Feb 23, 2018 at 10:32 PM
Subject: Your YouTube account has been terminated
To: David Seaman <dseaman@gmail.com>



Hi David Seaman,

As you may know, our Community Guidelines describe which content we allow – and don't allow – on YouTube. Your video "CNN's Own Audience Revolting Over DAVID HOGG Interview!!!" was flagged for review. Upon review, we've determined that it violates our guidelines. We've removed it from YouTube and assigned a Community Guidelines strike to your account.

## Video content restrictions

YouTubers share their opinions on a wide range of different topics. However, there's a fine line between passionate debate and personal attacks. As our Community Guidelines outline, YouTube is not a platform for things like predatory behavior, stalking, threats, harassment, bullying, or intimidation. We take this issue seriously and there are no excuses for such behavior. We remove comments, videos, or posts where the main aim is to maliciously harass or attack another user. If you're not sure whether or not your content crosses the line, we ask that you not post it. Learn more here.

## The impact of strikes

This is the third Community Guidelines strike your account has received within three months. Because of that, your account has now been terminated, and you won't be able to access or create any other YouTube accounts.

YouTube published the false and defamatory statement that David had "violated" its "Terms of Service":



7.     David "appealed" YouTube's decision to terminate his account. "YouTube Accounts" published the following false and defamatory email in response to David's "appeal":



YouTube informed David that his videos were permanently deleted and could not be recovered.

8.      The statements in YouTube's emails and on its website are false, defamatory and insulting.  David never engaged in _any_ violations of YouTube's Terms of Service or Community Guidelines on Harassment or Cyberbullying, let alone "repeated and severe" violations.  David never engaged in "predatory behavior, stalking, threats, harassment, bullying or intimidation."

9.      Google and YouTube operate the largest public square and forum for the general public to participate in video-based speech, expression and association in the entire World.  Indeed, YouTube is the largest forum for video-based speech by members of the general public in the history of the Mankind.  The total number of people who currently use the YouTube platform exceeds 1.9 billion people.  More than 30 million members of the general public visit the platform every day.  More video content has been uploaded to YouTube by public users than has been created by the major U.S. television networks in 30 years.

10.     For years, Google and YouTube held themselves out to the public as defenders and protectors of free speech.  Google and YouTube encouraged members of the general public, like David, to join the platform and to freely speak, express, and exchange ideas.  Google induced and incentivized YouTube users to create and publish content by monetizing channels and by promising to share the huge and unprecedented profits received from advertisements embedded in videos.

11.     In truth, and as happened to David, Google and YouTube censor videos using criteria and concepts that are undefined, intentionally vague, over-broad and that

are designed to allow Google and YouTube to exercise arbitrary, capricious, unfettered, unilateral, unbridled, and purely subjective discretion as to what is and is not "appropriate". In so doing, Google and YouTube are censoring videos, including those published by David, not based on any objective finding of inappropriate material, but on Google and YouTube's purely subjective perception of what they deem politically correct and incorrect. Google and YouTube created the purely subjective and unspecific criteria spelled out in the Community Guidelines in order to justify censorship based on the political viewpoints and identity of the content-creator and speaker.

12. David Seaman brings this lawsuit to recover money damages and to stop Google/YouTube from unlawfully censoring David's views and discriminating against David's right to freedom of speech.

## II. PARTIES

13. Plaintiff, David Seaman ("David"), is a citizen of the District of Columbia. He is 32 years-old. David is a journalist, investigative reporter, researcher, pundit, author and publisher. He is a private individual. For many years, David has reported on matters of great public concern, including **#pedogate** – child sex trafficking, ritualistic murder, torture, kidnapping, rape, child sex slavery, and the global network of child sex traffickers and pedophile rings for rich and powerful people in the elite ruling classes, Hollywood and the entertainment industry.[1] On February 23, 2018, as a direct result of

---

[1] [*See, e.g.,* https://www.sott.net/article/343780-Pizzagate-turned-PedoGate-Leads-to-Momentum-Surge-in-Busting-Global-Child-Sex-Trafficking-Rings; http://www.dailymail.co.uk/news/article-2542097/BBC-staff-ignored-1-000-attacks-children-predatory-DJ-Jimmy-Savile-according-new-damning-report-lifting-lid-entire-scandal.html; https://www.youtube.com/watch?v=12zVlaZyX3Q; https://nypost.com/2016/10/09/the-sex-slave-scandal-that-exposed-pedophile-billionaire-jeffrey-epstein/; https://wikileaks.org/podesta-emails/].

his reporting on **#pedogate** and the expression of his views on the subject, David was permanently banned from YouTube and his entire video archive (a lifetime of work and reporting) was permanently deleted. https://www.youtube.com/user/davidseamanonline; https://twitter.com/davidseamanweb?lang=en].

14.    Defendant, YouTube, LLC ("YouTube"), is a limited liability company organized and existing under the laws of Delaware.  YouTube's sole member is defendant, Google, LLC ("Google").

15.    YouTube is a leading online platform for creating, developing, uploading, searching for, viewing and sharing videos.  Upon information and belief, YouTube has millions of users in Virginia.

16.    Defendant, Google, is a Delaware corporation headquartered in Mountain View, California.  Google is an operating segment of Alphabet Inc., a public company (NASDAQ:GOOGL).  Google is authorized to transact business in Virginia (SCC Id. No. F1560871).  Google maintain its registered agent in the City of Richmond.

17.    Upon information and belief, millions of Virginians have an account with Google and use one or more Google products.

18.    Google controls and operates YouTube.  YouTube is a mere instrumentality of Google.  The unity of interest and ownership between Google and YouTube is such that the separate personalities of the two corporations do not exist.

### III.  JURISDICTION AND VENUE

19.    The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331 (Federal Question), § 1332 (Diversity) and § 1367 (Supplemental Jurisdiction).  The parties are

citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

20.    YouTube and Google are subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4) of the Code, as well as the Due Process Clause of the United States Constitution.  Both Defendants are subject to general personal jurisdiction.  They engage in continuous and systematic business in Virginia from which they derive enormous revenue and profit. YouTube and Google have minimum contacts with Virginia such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

21.    Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia.  The Defendants are each subject to the District Court's personal jurisdiction with respect to this action.

### IV.   STATEMENT OF THE FACTS

**A.    *YouTube, Google and the Development of Content***

22.    Google's core products – Search, Android, Maps, Chrome, YouTube, Google Play and Gmail – each have over one billion monthly active users.

23.    YouTube has over 1.9 billion monthly active users – over one-third of all people on the Internet – and each day those users stream (watch) over a billion hours of video, generating billions of views.  Over 300 new hours of video are uploaded to YouTube     every     single     minute.     [https://www.youtube.com/yt/about/press/;

https://www.fool.com/investing/2017/06/26/youtube-has-15-billion-viewers-watching-over-an-ho.aspx; https://www.omnicoreagency.com/youtube-statistics/; https://www.statisticbrain.com/youtube-statistics/].

24.     YouTube generates revenues by delivering online advertising to users. YouTube collaborates with channel-members to develop content that will attract users and generate revenues.

25.     As an incentive to develop content, YouTube "monetizes" videos and shares a portion of its advertising revenues with its channel-members.

26.     In order to post videos on YouTube, a person needs to join YouTube as a member with his or her existing Google account, and create a YouTube "channel".  A "channel" on YouTube is the home page for the user's account.  The channel shows the account name, the account type, a personal description, the public videos the member uploads, a list of members who are friends, and any user information the member enters. The channel also includes a section where other members can comment.

27.     "Subscribers" are people who "follow" a member's channel and who have the right to republish a member's content to others.  Once a person subscribes to another's channel, any videos that channel publishes will show up in the subscriber's "Subscriptions feed".  In general, a person can subscribe to a maximum of 2,000 YouTube channels.  According to YouTube, "subscribers" are critical to a person's "success" on YouTube [https://creatoracademy.youtube.com/page/lesson/subscriber-advantage] "because they tend to spend more time watching your channel than viewers who are not subscribed.  And on YouTube, strong watch time is critical."

28.     Google bought YouTube in 2006, but generated little revenue in the early years.  Revenue began to accelerate in part due to "skippable" advertisements YouTube introduced in 2010.  In 2012, YouTube doubled its efforts to generate ad revenues by paying hundreds of millions of dollars to third-parties to create television-like channels and by tweaking its algorithms to promote videos that encourage more frequent visits to www.youtube.com.  Today, YouTube employs a whole host of advertising techniques to generate "eyeballs" and revenue, including "TrueView" in-stream ads, "Pre-Roll" video ads, and six-second long "bumpers".  [https://dashtwo.com/blog/different-youtube-ads/].

29.     Although YouTube faces competition for advertising revenue from Facebook, Inc. ("Facebook") and others, YouTube's revenues are skyrocketing.  In 2017, YouTube earned more than $10 Billion Dollars in revenue. [https://www.thestreet.com/investing/youtube-might-be-worth-over-100-billion-14586599; https://www.fool.com/investing/2018/02/18/youtube-could-be-a-15-billion-business-this-year.aspx].  UBS estimates that YouTube's revenues will reach $27 Billion Dollars by 2020.

**B.**     ***YouTube's Terms of Service and Community Guidelines***

30.     YouTube publishes "Terms of Service" and "Community Guidelines" that govern a member's use of the platform.  [https://www.youtube.com/t/terms; and https://www.youtube.com/yt/policyandsafety/communityguidelines.html].

31.     The YouTube Terms of Service and Community Guidelines are "content" policies.  YouTube and Google developed the Terms of Service and Community Guidelines to facilitate and regulate content on www.youtube.com.

32.     YouTube's Terms of Service generally provide that a user of the service "will not submit to the Service any Content or other material that is contrary to the YouTube Community Guidelines". [https://www.youtube.com/t/terms (Terms, § 6(E)].

33.     YouTube's Community Guidelines represent that:

> "Our products are platforms for free expression.  But we don't support content that promotes or condones violence against individuals or groups based on race or ethnic origin, religion, disability, gender, age, nationality, veteran status, or sexual orientation/gender identity, or whose primary purpose is inciting hatred on the basis of these core characteristics.  This can be a delicate balancing act, but if the primary purpose is to attack a protected group, the content crosses the line."

[https://www.youtube.com/yt/about/policies/#community-guidelines].   YouTube's "Hate speech policy" proclaims that "[w]e encourage free speech and try to defend your right to express unpopular points of view, but we don't permit hate speech.  Hate speech refers to content that promotes violence against or has the primary purpose of inciting hatred against individuals or groups based on certain attributes, such as race or ethnic origin [etc.]".   [https://support.google.com/youtube/answer/2801939?hl=en].   YouTube claims that "[i]t's not ok to post abusive videos and comments on YouTube.  If harassment crosses the line into a malicious attack it can be reported and may be removed.  In other cases, users may be mildly annoying or petty and should be ignored."   YouTube's "Harassment and cyber-bulling policy" states as follows:

> "We want you to use YouTube without fear of being subjected to malicious harassment.  In cases where harassment crosses the line into a malicious attack it can be reported and will be removed.  In other cases, users may be mildly annoying or petty and should simply be ignored.

> Harassment may include:

- Abusive videos, comments, messages
- Revealing someone's personal information, including sensitive personally identifiable information such as social security numbers, passport numbers, or bank account numbers.
- Maliciously recording someone without their consent
- Deliberately posting content in order to humiliate someone
- Making hurtful and negative comments/videos about another person
- Unwanted sexualization, which encompasses sexual harassment or sexual bullying in any form
- Incitement to harass other users or creators

[https://support.google.com/youtube/answer/2802268?hl=en&ref_topic=2803176].

YouTube maintains that "[t]hings like predatory behavior, stalking, threats, harassment, intimidation, invading privacy, revealing other people's personal information, and inciting others to commit violent acts or to violate the Terms of Use are taken very seriously.   Anyone caught doing these things may be permanently banned from YouTube."   YouTube's "Policy on threats" reads:

> "The YouTube community is important to us and we want to see it flourish.  To ensure that this is possible, content that makes threats of serious physical harm against a specific individual or defined group of individuals will be removed.
>
> People who threaten others may receive a strike on their account and their account may be terminated."

[https://support.google.com/youtube/answer/2801927?hl=en&ref_topic=2803176].

34.    YouTube vaguely warns that:

> "[i]f a YouTube creator's on- and/or off-platform behavior harms our users, community, employees or ecosystem, we may respond based on a number of factors including, but not limited to, the egregiousness of their actions and whether a pattern of harmful behavior exists.
>
> Our response will range from suspending a creator's privileges to account termination."

[https://www.youtube.com/yt/about/policies/#community-guidelines].

35.     YouTube's Terms of Service contain an "Account Termination Policy", which provides that "YouTube will terminate a user's access to the Service if, under appropriate circumstances, the user is determined to be a repeat infringer."  The policy further states that YouTube "reserves the right to decide whether Content violates these Terms of Service for reasons other than copyright infringement, such as, but not limited to, pornography, obscenity, or excessive length. YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service." [https://www.youtube.com/t/terms (Terms, § 7(A-B)].

C.     *Flagging, Strikes, Appeals and Termination*

36.     YouTube relies on a combination of people and technology to flag inappropriate content and enforce YouTube's Community Guidelines.  Flags can come from YouTube's "automated flagging systems", from members of the Trusted Flagger program (NGOs, government agencies, and individuals), or from users in the broader YouTube community.  The vast majority of videos removed from YouTube are removed because of "automatic flagging" by YouTube's computer system, *i.e. by one or more algorithms created by YouTube itself.*  [https://transparencyreport.google.com/youtube-policy/overview].

37.     YouTube encourages "community members" to anonymously report content they find "inappropriate", *i.e., to complain about other members whose views they disagree with.*  [https://support.google.com/youtube/answer/2802027?hl=en ("Reporting content is anonymous, so other users can't tell who made the report.")].

Community members can also directly report an "abusive" user, again anonymously.

[https://www.youtube.com/yt/about/policies/#reporting-and-enforcement].

38.     YouTube's Community Guidelines represent that:

"Our staff carefully reviews flagged content 24 hours a day, 7 days a week to determine whether there's a violation of our Community Guidelines."

[https://www.youtube.com/yt/about/policies/#reporting-and-enforcement].        If    no

violations are found by YouTube's "review team", no amount of additional flagging or

reporting   will   change   that   "and   the   video   will   remain   on   our   site."

[https://support.google.com/youtube/answer/2802027?hl=en (Report a video)].  If, on the

other   hand,   YouTube's   "content   moderators"   find   a   violation   of   the   Community

Guidelines, they can remove the offending video, age-restrict it, or issue a "strike" to the

channel.   Accounts with one Community Guidelines strike may be restricted from live

streaming.   If an account receives two Community Guidelines strikes within a three-

month period, the channel will not be able to post new content to YouTube for 2 weeks.

If the account receives three Community Guidelines strikes within a three-month period,

it "will be terminated." [https://support.google.com/youtube/answer/2802032?hl=en].

39.     Google claims that YouTube employs over 200 people[2] around the World

for the purpose of detecting and removing videos that violate YouTube's Community

Guidelines.   According to YouTube, the people that review flagged videos are "highly

trained".   [https://support.google.com/youtube/answer/185111?hl=en].    The   nature   and

quality of the review, if any, is not known.  If a channel member believes his video does

not violate the Community Guidelines and was removed in error, "you can appeal the

---

[2]     Google and YouTube do not disclose whether these people are attorneys or whether or how they are "trained", if at all, in the detection and removal of content that may violate the Community Guidelines.

strike".  There are no procedures or rules applicable to the "appeal".  It is unclear who decides the appeal or if there are any standards of review or criteria for overturning a strike.  After submitting an appeal:

> "You'll get an email from YouTube letting you know the result of your appeal request.  One of four things may happen:
>
> •     If we find that your video did not violate our Community Guidelines, we'll reinstate it and remove the strike from your account.
>
> •     In some instances, it's possible that we may remove the strike from your account, but keep the video down.
>
> •     In some instances, it's possible that we may reinstate your video behind an age restriction.  This will happen if a violation is not found, but the content isn't appropriate for all audiences.
>
> •     If we find that your video was in violation of our Community Guidelines, we will uphold the strike and the video will remain down from the site."

[https://support.google.com/youtube/answer/185111?hl=en].

40.    YouTube accounts can be terminated for three (3) reasons: (a) repeated violations of the Community Guidelines or Terms of Service; (b) a single case of severe abuse (such as predatory behavior or spam); or (c) accounts dedicated to a policy violation (hate speech, harassment, impersonation, etc.).  When an account is terminated, the account owner receives an email detailing the reason for the termination.  If a channel member believes that his account was terminated in error, he can appeal using a form. [https://support.google.com/youtube/answer/2802168?hl=en&ref_topic=2803138].

41.    YouTube did not ban David Seaman because David engaged in hateful, harassing, bullying or abusive behavior.  David's account was terminated in February 2018 because Google and YouTube did not like his speech, his expression, his reporting on **#pedogate.**  Google executive, Eric Schmidt, had very close ties to some of the people

17

that David Seaman accused of engaging in pedophilia and human trafficking. [https://www.businessinsider.com/wikileaks-emails-google-eric-schmidt-relationship-with-clintons-2016-11].   Google and YouTube censored David (and many others like him) for the illegitimate purpose of suppressing his free speech.

42.    The loss of his YouTube channel was a crippling blow to David and the hundreds, if not thousands, of other users whose accounts have been banned since Google and YouTube embarked on its campaign to censor and purge conservatives who use its open public platform.

43.    There is no public forum comparable to YouTube that would allow David to produce and publish videos expressing his views and to participate in the important public debate about **#pedogate** and human trafficking in America. [https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-taking-action-end-human-trafficking/].   Access to YouTube's open public forum is nothing short of essential to participate as citizens in public affairs in today's America.

44.    This action does not implicate Google and YouTube's right to regulate its public forum to prevent legitimate instances of hate speech, harassment, bullying, threats, and abuse,[3] so long as the Community Guidelines are enforced in a viewpoint-neutral manner.   Instead, this case raises the issue whether Google and YouTube can create an online public square, and then, once that public forum becomes ubiquitous, arbitrarily and discriminatorily ban users from the platform due to Google and YouTube's disagreement with a speaker's viewpoint, political beliefs, and perceived political

---

[3]    Incredibly, YouTube's Community Guidelines do not condemn and forbid defamation, libel and slander.

affiliations. The answer compelled by the United States Constitution, the laws of the United States, and the Virginia Constitution is clear: it cannot.

45. Giving Google and YouTube the power to ban speakers due to the controversial nature of their speech and affiliations would nullify the guarantees of both the First Amendment and Article I, § 12 of the Virginia Constitution that "the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects". In the words of the late United States Supreme Court Justice Oliver Wendell Holmes, Jr., "if there is any principle of the Constitution that more imperatively calls for attachment than any other, it is the principle of free thought – not free thought for those who agree with us but freedom for the thought that we hate." *United States v. Schwimmer*, 279 U.S. 644, 654-655 (1929) (Holmes, J., dissenting).

## COUNT I – VIOLATION OF THE FIRST AMENDMENT

46. Plaintiff repeats paragraphs 1 through 45 of his Complaint, and incorporates them herein by reference.

47. Google and YouTube by their actions, all of which took place under color of state law, subjected (or caused to be subjected) David to the deprivation of rights and privileges secured by the First Amendment to the United States Constitution in violation of Title 42 U.S.C. § 1983.

48. YouTube is *the* preeminent platform in which important political debates take place in the modern World. The United States Supreme Court described social media sites, such as YouTube, Twitter and Facebook, as the "modern public square." *Packingham*

*v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).   YouTube is used by politicians, academics, media, businesses and ordinary citizens the World over, expressing every conceivable viewpoint known to man.   Virtually everyone has a YouTube account. Unique among social media sites, YouTube allows ordinary citizens to interact directly, to actively protest and to communicate with famous and prominent individuals in a wide variety of different fields.   YouTube has become an important communications channel for governments   and   heads   of   state   around   the   World.   *See,   e.g.,* https://www.youtube.com/channel/UCYxRlFDqcWM4y7FfpiAN3KQ     (White     House YouTube Channel); https://www.youtube.com/channel/UCyvEONnqE2Krm9Zi0LVvGmA (YouTube   Channel   of   Justin   Trudeau,   Prime   Minister   of   Canada); https://www.youtube.com/channel/UCwyivNlEGf4sGd1oDLfY5jw (YouTube Channel of Senator     Mark     Warner);     https://www.youtube.com/user/Virginiagovernment (Commonwealth         of         Virginia         YouTube         Channel); https://www.youtube.com/channel/UCjvnoJkcgIpbeaoVOaLkA4A   (Richmond,   Virginia YouTube Channel).

49.    As the Supreme Court noted in *Packingham*, "[O]n Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 States and almost every Member of Congress have set up accounts for this purpose.   In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought." 137 S. Ct. at 1735-1736 (internal citations and quotations omitted).   The Court in *Packingham* went on to observe, in regard to social media sites like Twitter, Facebook and YouTube:

> "These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.'"

*Id*. at 1737 (citation omitted) (quoting *Reno v. American Civil Liberties Union*, 521 U. S. 844, 870 (1997)).

50.    Google and YouTube have no free speech or expressive interest whatsoever in banning users from the open platform. The United States Supreme Court expressly rejected the argument that privately-owned public forums (such as YouTube) have "a First Amendment right not to be forced by the State to use [its] property as a forum for the speech of others." *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 85 (1980). The Court in *Pruneyard* affirmed and held that a privately-owned public forum lacked such First Amendment rights primarily because it was unlikely that the views expressed by members of the general public would be identified as those of the property's owner. *Id*. at 87. So too in this case, all videos from individual users are clearly identified with that user, and it is universally understood that videos reflect the viewpoints of the user, in this case David Seaman, who uploaded the video, and not Google or YouTube or Eric Schmidt or Wojcicki.

51.    Google and YouTube's actions threaten the free speech of all users on its platform. Google/YouTube asserts the unilateral right to deprive anyone, at any time, of the ability to speak on its forum, if it disagrees with the user's viewpoint or perceived political affiliations. This will have, and has had, a chilling effect on the public at large. YouTube and Google's actions in playing the role of a viewpoint censor, and banning David (and hundreds of other channels), poses a direct threat to our "profound national commitment to the principle that debate on public issues should be uninhibited, robust,

and wideopen." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). It is a direct break with this Country's long and cherished tradition of protecting the rights of Communists, radicals, religious minorities, and other speakers with controversial or unpopular views to freely speak and petition in the public square. As noted by one of our greatest jurists, the late United States Supreme Court Justice and lead Nuremberg Prosecutor, Robert Jackson, in a 1950 opinion: "The priceless heritage of our society is the unrestricted constitutional right of each member to think as he will." *American Communications Ass'n v. Douds*, 339 U.S. 382, 442 (1950) (Jackson, J., concurring).

52.    Virginia, and the nation as a whole, has a supremely important interest in ensuring that our national dialogue remains uninhibited and robust, and that the traditional freedom of individuals with unpopular views to speak in public forums is upheld. Bans on individuals, who are perceived as having controversial views, an unsavory past, or undesirable associations, from speaking in the public square (such as those enforced by Google and YouTube in this case) are completely antithetical to the constitutional heritage of Virginia and the nation as a whole. "Thought control is a copyright of totalitarianism, and we have no claim to it." *American Communications Ass'n*, 339 U.S. at 442 (Jackson, J., concurring).

53.    As a result of Google and YouTube's actions, David Seaman and other users who have been banned under Google/YouTube's censorship regime have suffered and will continue to suffer irreparable harm. There is no public platform comparable to YouTube that would allow David and similarly-situated users to express their views and participate in the marketplace of ideas. Unique among social media platforms, YouTube facilitates direct interaction between ordinary individuals and public figures. YouTube

has 1.9 Billion active monthly users, and is of unmatched importance in influencing public debate and news coverage of current affairs.  Every major news organization has a YouTube channel, *e.g.*:

https://www.youtube.com/user/TheNewYorkTimes (New York Times);

https://www.youtube.com/user/WSJDigitalNetwork (Wall Street Journal);

https://www.youtube.com/channel/UCXIJgqnII2ZOINSWNOGFThA (Fox);

https://www.youtube.com/user/CBS (CBS);

https://www.youtube.com/channel/UC_IpSl6O_-IRAA6fiNs05Gg (ABC);

https://www.youtube.com/nbc (NBC);

https://www.youtube.com/user/cnbc (CNBC);

https://www.youtube.com/channel/UCs7JOfbJVlXrcoypLczuP6Q (RTD).

54.    By terminating his channel and permanently banning him from the public square, Google and YouTube deprived David of an essential mechanism to speak and engage in public discussion and debate.

55.    Google and YouTube, for their own advantage and enormous profit, opened up the YouTube platform for use by the general public.  As the highest court in the nation made clear 72 years ago, "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh v. Alabama*, 326 U.S. 501, 502-503 (1946).

56.    In today's age of social media, there is no greater or more vibrant public square than YouTube.

23

57.     The First Amendment of the United States Constitution protects freedom of speech and association against viewpoint discrimination in the access and use of public spaces, quasi-public spaces, and limited public spaces.  It also protects the rights of all Americans to free association with others.

58.     Google and YouTube created, operate and control the YouTube site, platform and services as a public forum or its functional equivalent by intentionally and openly dedicating YouTube for public use and public benefit, expressly inviting the public to utilize YouTube as a forum for free speech.  Google and YouTube further act as state actors because both they and the YouTube site, www.youtube.com, perform an exclusively and traditionally public function by regulating free speech within a public forum.   Accordingly, speech cannot be arbitrarily, unreasonably, or discriminatorily excluded, regulated, or restricted on YouTube on the basis of viewpoint or the identity of the speaker.

59.     Google and YouTube's actions deprived David of his constitutional rights guaranteed by the First Amendment.  Google and YouTube restricted David's speech and expressive conduct by adopting and applying subjective, vague, and overbroad Community Guidelines that give Google and YouTube unfettered and unbridled discretion to censor speech for arbitrary, capricious, or, as in this case, nonexistent reasons, simply because Google and certain of its apex officials, including Eric Schmidt, do not like the viewpoint.   The intentionally vague criteria set forth in YouTube's Community Guidelines fail to convey a sufficiently definite warning to any user and/or the public as to what is prohibited or restricted and, as a result, allow Google and

YouTube to censor speech at their whim and terminate opposition speech based on their subjective animus towards the speaker or his particular political viewpoint.

60.     Google and YouTube also apply their censorship criteria, including the Terms of Use and Community Guidelines, as a pretext to censor and restrict David's speech, based not on the content of the speech but because of David's political viewpoints.  Google and YouTube have restricted content uploaded by David to the YouTube platform, but have not restricted similar or identical video content uploaded and posted on the YouTube site by perhaps HUNDREDS of other users, *e.g.*:

https://www.youtube.com/watch?v=cZ8ByBIIJRo;

https://www.youtube.com/watch?v=R_wnd6xYTwU;

https://www.youtube.com/watch?v=5R7RG5_s94w.

Defendants' application of criteria and corresponding restraints on David's speech is arbitrary and capricious and/or is based on political, religious, or other animus towards the identity and viewpoints of the speaker, not the actual content of the speech.

61.     No compelling, significant, or legitimate reason justifies terminating and banning David from YouTube.   Even if such interests did exist to justify Google/YouTube's actions, the restrictions imposed on David's speech are not narrowly or reasonably tailored to further such interests.  Given Google/YouTube's monopolistic control over search results, including video search results, as well as online video streaming, David has no alternative channel affording a reasonable opportunity to reach his full intended audience.  Google/YouTube's discriminatory policies and application of those policies are not viewpoint neutral, are unreasonable in time, place, and manner, and are unreasonable in relation to the nature, purpose, and use of the public forum. Rather,

they impose an unreasonable prior restraint on David's protected political speech, motivated by impermissible discrimination against David's viewpoint.

62.     Google and YouTube's actions and conduct violate Title 42 U.S.C. § 1983.  Google and YouTube barred and/or restricted David's access to an electronic public forum, because of viewpoints expressed by David in violation of David's rights to freedom of speech under the First Amendment to the United States Constitution. Because YouTube is freely and openly accessible to the public, Google and YouTube's actions in banning David and other similarly-situated users constitutes "state action" for purposes of § 1983 and the Virginia Constitution.

63.     As a direct and proximate result of Google and YouTube's violations, David has suffered actual damages in the amount of $1,000,000.00, including, loss or injury to business, loss or diminution of future earnings potential, pain, insult, embarrassment, humiliation, emotional distress and mental suffering, damage to brand and injury to reputation, plus punitive damages and attorney's fees and expert witness fees under 42 U.S.C. § 1988.

### COUNT II – COMMON CARRIER DISCRIMINATION

64.     Plaintiff repeats paragraphs 1 through 63 of his Complaint, and 4incorporates them herein by reference.

65.     Google and YouTube by their actions, all of which took place under color of state law, subjected (or caused to be subjected) David to the deprivation of rights and privileges secured by Title 47 U.S.C. § 202(a) in violation of Title 42 U.S.C. § 1983.

66.    Google and YouTube are also liable to David under Title 47 U.S.C. § 206 for their actions in violation of 47 U.S.C. § 202(a).

67.    Title 47 U.S.C. § 202(a), in pertinent part, makes it:

"unlawful for any common carrier to make any unjust or unreasonable discrimination in … practices … or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person [or] class of persons … or to subject any particular person [or] class of persons … to any undue or unreasonable prejudice or disadvantage."

68.    Google and YouTube are natural monopolies or near monopolies.  They are common carriers within the meaning of § 202(a).  Google and YouTube are persons engaged as a common carrier for hire in interstate and foreign communication by wire. Google and YouTube are providers of interactive computer services.  Google and YouTube provide services or systems that enable computer access by multiple users to computer servers throughout the World.  Google and YouTube move videos uploaded to the YouTube service (platform) from channels to subscribers to end-users on the Internet. Google is also a broadband internet access provider (BIAS) via Google Fiber and Google Project Fi, Google's national wireless broadband offering which resells Sprint and T-Mobile's national networks combined with WiFi. [https://fiber.google.com/about/].

69.    Google and YouTube have made unjust or unreasonable discrimination in practices or services in connection with the YouTube platform, including, without limitation, access to the platform.  Google and YouTube are not treating all people the same or fairly.  Some people's channels, like David's, are terminated arbitrarily because of the viewpoint expressed.

70.    Google and YouTube have made or given undue or unreasonable preference or advantage to particular persons or classes of persons based upon their

speech and political viewpoints and have subjected particular persons, including David, to undue or unreasonable prejudice or disadvantage because of their thoughts, beliefs, and speech on certain topics or expressions.

71.     As a direct and proximate result of Google and YouTube's violations, David has suffered actual damages in the amount of $1,000,000.00, including, loss or injury to business, loss or diminution of future earnings potential, pain, insult, embarrassment, humiliation, emotional distress and mental suffering, damage to brand and injury to reputation, plus punitive damages and attorney's fees and expert witness fees under Title 42 U.S.C. § 1988 and 47 U.S.C. § 206.

## <u>COUNT III – VIOLATION OF THE VIRGINIA CONSTITUTION</u>

72.     Plaintiff repeats paragraphs 1 through 71 of his Complaint, and incorporates them herein by reference.

73.     Article I, § 12 of the Virginia Constitution guarantees that "the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right".

74.     Article I, § 12 of the Virginia Constitution is self-exeecuting.

75.     YouTube is a public forum or its functional equivalent for the public to express and exchange views and ideas.

76.     Google and YouTube have restrained and restricted David's free speech and free publication of ideas and sentiments on the subject of **#pedogate** and other topics in a manner that is arbitrary, unreasonable and discriminatory.   Google and

YouTube restricted and excluded David from a public forum on the basis of David's thoughts, beliefs and viewpoint.

77.     Google and YouTube's actions and conduct violate Article I, § 12 of the Virginia Constitution.

78.     As a direct and proximate result of Google and YouTube's violations, David has suffered actual damages in the amount of $1,000,000.00, including, loss or injury to business, loss or diminution of future earnings potential, pain, insult, embarrassment, humiliation, emotional distress and mental suffering, damage to brand and injury to reputation, plus punitive damages.

## COUNT IV – DEFAMATION *PER SE*

79.     Plaintiff restates paragraphs 1 through 78 of his Complaint, and incorporates them herein by reference.

80.     YouTube made and published to third-parties numerous false factual statements, which are detailed verbatim above, about or concerning David without privilege of any kind.

81.     YouTube's false statements constitute defamation *per se*.  The statements accuse and impute to David the commission of crimes involving moral turpitude and for which David may be punished and imprisoned in a state or federal institution.  The statements impute to David an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment.  YouTube's statements also prejudice David in his profession or trade as an investigative journalist.

82.     YouTube's false statements have harmed David and his reputation.

83.     YouTube made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false.  YouTube acted with actual malice and reckless disregard for the truth for the following reasons:

a.     YouTube intentionally censored David.  YouTube employed a scheme or artifice to suppress David's viewpoint and promote Google's predetermined political agenda, creating algorithms and pre-programming computers to flag David's videos (and videos with similar content) and strike David's channel.

b.     YouTube rigged the game.  It lied about David's videos being "flagged to us".  In fact, YouTube's computers flagged the videos.  YouTube lied about conducting "reviews" of David's videos.  No "reviews" were undertaken by anyone. Strikes were simply assigned until David struck out.  The "appeal" of the termination of David's account was not real.  Google and YouTube's actions were entirely pretextual and were calculated to hide the fact that Google and YouTube were engaged in censorship.

c.     Based on "automated flagging" only, YouTube published statements about David that were knowingly false, with not a shred of supporting evidence.

d.     YouTube chose to manufacture and publish false and scandalous statements and use unnecessarily strong and violent language, disproportionate to the occasion, in order to terminate David's channel and prevent his free speech about #pedogate.

e.     YouTube did not act in good faith because, in the total absence of evidence that David had ever violated YouTube's Terms of Service or Community

Guidelines, YouTube could not have had an honest belief in the truth of its statements about David.

       f.     YouTube reiterated, repeated and continued to republish its false defamatory statements out of a desire to hurt David and to permanently stigmatize him.

84.    YouTube lacked reasonable grounds for any belief in the truth of its statements, and acted negligently in failing to determine the true facts.

85.    As a direct result of YouTube's defamation, David suffered presumed damages and actual damages, including, but not limited to, loss or injury to business, insult, pain, embarrassment, humiliation, mental suffering, injury to his reputation, special damages, costs, and other out-of-pocket expenses, in the sum of $1,000,000.00 or such greater amount as is determined by the Jury.

## COUNT V – VIOLATION OF THE VCPA

86.    Plaintiff restates paragraphs 1 through 85 of his Complaint, and incorporate them herein by reference.

87.    David is a consumer of goods or services within the meaning of the Virginia Consumer Protection Act of 1977 ("VCPA"), § 59.1-196 *et seq.* of the Code.

88.    Google and YouTube are suppliers within the meaning of the VCPA. Google and YouTube advertised and sold goods and services to David to be used by David primarily for personal purposes.

89.    Google and YouTube's actions and intentional omissions and misrepresentations (described above) violate the VCPA in numerous respects, including, but not limited to, violations of §§ 59.1-200(A) 5, 6, 8, and 14. Using the artifice of "Terms of Service" and "Community Guidelines", Google and YouTube misrepresented

that the services provided by YouTube had certain qualities, characteristics, uses or benefits and were of a particular standard, quality, grade or style.  Google and YouTube advertised good and services without the intent to actually sell the services as advertised and used deception, fraud, false pretense, and false promises to induce David into building a channel and brand on YouTube.   Specifically, Google and YouTube misrepresented that YouTube was a public forum for equal and open expression by diverse speakers; that YouTube was a platform where David would be free to express his thoughts and exchange his ideas with others; that David's use of YouTube was not at Google and YouTube's whim or subjective discretion; that the Terms of Service and Community Guidelines had objective meaning and would enforced in an objectively reasonable and consistent manner, instead of systematically by pre-programmed computers; that Google and YouTube did not censor content; and that Google and YouTube would not suppress David's speech because of the viewpoint or subject matter of his videos.   In February 2018, Google and YouTube terminated David's channel employing fraudulent and deceptive practices.  They degraded David and his videos by stating and/or implying that David and his speech are hateful, harassing, bullying, offensive and/or inappropriate.

90.    At all times relevant to this action, Google and YouTube's actions were willful.  Google and YouTube concealed from David its censorship of the YouTube platform and its motivation for banning David from YouTube.

91.    As a result of Google and YouTube's violations of the VCPA, David suffered actual damages and incurred loss, including, without limitation, loss or injury to his property, personal and emotional injuries. attorney's fees, court costs, and other

damages in the sum of $1,000,000.00 or such greater amount as is determined by the Jury.

92.     In accordance with § 59.1-204(A) of the Code, David seeks three times the actual damages sustained.

## COUNT VI – BREACH OF CONTRACT

93.     Plaintiff restates paragraphs 1 through 92 of his Complaint, and incorporates them herein by reference.

94.     The Terms of Service and Community Guidelines constitute a valid and enforceable written contract between Google and YouTube and David.  Pursuant to the Terms of Service and Community Guidelines, Google and YouTube agreed to provide access to YouTube and hosting, streaming, and advertising services to Plaintiff.

95.     As with all contracts in Virginia [*Enomoto v. Space Adventures. Ltd.*, 624 F.Supp.2d 443, 450 (E.D. Va. 2009) (Cacheris, J.) (quoting and citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 541-542 (4th Cir. 1998); *Penn. Life Ins. Co. v. Bumbrey,* 665 F.Supp. 1190, 1195 (E.D. Va. 1987))], the Google/YouTube Terms of Service and Community Guidelines contain an implied covenant of good faith and fair dealing.  This is particularly true because, in those contracts, Google and YouTube assumed for themselves unilateral and unfettered discretionary control over virtually every aspect of their relationship with David – control that Google and YouTube have exercised at their whim, repeatedly and without notice to David, and without an opportunity for meaningful discussion or appeal.  To the extent that those discretionary powers are valid, Google and YouTube are obligated to exercise them honestly, fairly and in good faith.

96.     Google and YouTube materially breached the Terms of Service and Community Guidelines and the covenant of good faith and fair dealing by (a) censoring David because of his political views, thoughts, speech and expression, (b) secretly changing algorithms so as to cause David's videos to be automatically flagged by Google's computers, (c) failing to actually review David's videos to determine whether the videos in any way violated the Community Guidelines, (d) falsely stating that a review had taken place and that David's videos violated the Community Guidelines, (e) assigning strikes to David's videos, and (f) terminating David's account and banning him from YouTube.

97.     As a direct result of Google and YouTube's material breaches, David suffered damage and loss, including, but not limited to, loss or injury to business, loss of good will, costs, and other out-of-pocket expenses and damages in the sum of $1,000,000.00 or such greater amount as is determined by the Jury.

## COUNT VII – PERMANENT INJUNCTION

98.     Plaintiff restates paragraphs 1 through 97 of his Complaint, and incorporates them herein by reference.

99.     In order to protect David's property interests and his reputation, David requests the Court to permanently enjoin and order Google and YouTube to restore his channel and the videos published on his channel.

100.     Without Court intervention and an injunction, David will suffer actual and irreparable injury to his property interests and personal rights.

101.    There is a substantial likelihood that David will succeed on the merits of his claims, as the termination of David's channel and the removal of his videos was the result of discriminatory censorship.  David does not have an adequate remedy at law.

David alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.  David believes that substantial additional evidentiary support, which is in the exclusive possession of Google, YouTube and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

David reserves his right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, David Seaman respectfully requests the Court to enter Judgment against YouTube and Google, jointly and severally, as follows:

A.      Compensatory damages in the amount of $1,000,000.00 or such greater amount as is determined by the Jury;

B.      Treble Damages in accordance with § 59.1-204(B) of the Code in the total sum of $3,000,000.00;

C.      Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

D.      Prejudgment interest at the maximum rate allowed by law from;

E.      Postjudgment interest at the rate of six percent (6%) per annum until paid;

F.      Attorney's Fees, Expert Witness Fees and Costs;

G.      Such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**


DATED:          December 3, 2018



DAVID SEAMAN



By:    */s/ Steven S. Biss*
                Steven S. Biss (VSB # 32972)
                300 West Main Street, Suite 102
                Charlottesville, Virginia 22903
                Telephone:    (804) 501-8272
                Facsimile:     (202) 318-4098
                Email:          **stevenbiss@earthlink.net**

                *Counsel for the Plaintiff*