# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| **DAVID SEAMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 3-18-cv-00833-HEH** |
| | ) | |
| **YOUTUBE, LLC and GOOGLE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## <u>MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS</u>

Veronica Ascarrunz (VSB No. 67913)
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
Telephone: (202) 973-8843
Facsimile: (202) 973-8899
vascarrunz@wsgr.com

Brian M. Willen, admitted *pro hac vice*
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Attorneys for Defendants YouTube, LLC
and Google LLC

Dated: January 25, 2019

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ...................................................................................................................... 4

I.     PLAINTIFF'S COMPLAINT SHOULD BE TRANSFERRED TO THE
NORTHERN DISTRICT OF CALIFORNIA OR DISMISSED FOR
LACK OF PERSONAL JURISDICTION AND VENUE ...................................... 4

    A.     Motions to Transfer Based on a Forum-and-Venue-Selection
Clause Must Be Granted in All but the Most Unusual Cases .................... 4

    B.     The Forum Selection Clause in the Terms of Service Is Valid and
Applies to the Plaintiff's Claims in this Case ............................................ 5

    C.     In the Alternative, this Court Should Dismiss for Lack of Personal
Jurisdiction and Venue ............................................................................... 7

II.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY
ARE BARRED BY FEDERAL LAW ................................................................... 9

    A.     Plaintiff's Claims Are Barred by the First Amendment ........................... 9

    B.     Plaintiff's Claims Are Barred by Section 230 of the CDA ...................... 11

III.     PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION .................. 14

    A.     Plaintiff Cannot Assert Claims Under the Federal or Virginia
Constitutions ............................................................................................ 15

    B.     Plaintiff's Claim Under the Telecommunications Act Fails ..................... 18

    C.     Plaintiff's Claim of Defamation Per Se Fails as a Matter of Law ........... 20

        1.     Plaintiff Fails to Plead an Actionable Defamatory
Statement ...................................................................................... 21

        2.     Plaintiff Fails to Plead Publication to a Third Party .................... 23

    D.     Plaintiff Cannot Bring a Claim Against YouTube Under the
Virginia Consumer Protection Act ........................................................... 24

        1.     Plaintiff Cannot Apply the VCPA Extraterritorially ................... 25

        2.     Plaintiff's VCPA Claim Is Not Pleaded with Particularity ........... 26

        3.     Plaintiff Fails to Identify a "Consumer Transaction" ................... 26

    E.     Plaintiff's Breach of Contract Claim Fails ............................................... 27

F.      Plaintiff's "Claim" for a Permanent Injunction Should Be Dismissed ................................................................................... 29

CONCLUSION ........................................................................................................ 29

# TABLE OF AUTHORITIES

## CASES

*Adardour v. Am. Settlements, Inc.*,
No. 1:08cv798(AJT/TRJ), 2009 WL 1971458 (E.D. Va. July 2, 2009),
*aff'd*, 382 F. App'x 249 (4th Cir. 2010)......................................................................26

*Adhikari v. KBR, Inc.*,
No. 115CV1248JCCTCB, 2016 WL 4162012 (E.D. Va. Aug. 4, 2016)....................8

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981).................................................................................................25

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ....................................................................................2

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)...................................................................................................20

*Am. Online, Inc. v. GreatDeals.Net*,
49 F. Supp. 2d 851 (E.D. Va. 1999) .......................................................................18

*Apex Sys., LLC v. Schwartz*,
No. 3:16-cv-393, 2016 WL 9412462 (E.D. Va. Aug. 5, 2016) .................................5

*Arlosoroff v. NCAA*,
746 F.2d 1019 (4th Cir. 1984) .................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................24

*Atlantic Marine Constr. Co. v. District Court*,
571 U.S. 49 (2013).............................................................................................4, 5, 7

*Baker v. Elam*,
883 F. Supp. 2d 576 (E.D. Va. 2012) ......................................................................27

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
88 F. Supp. 3d 543 (E.D. Va.),
*aff'd*, 624 F. App'x 81 (4th Cir. 2015)....................................................................13

*Bank of Southside Va. v. Host & Cook, LLC*,
239 F.R.D. 441 (E.D. Va. 2007) ..............................................................................26

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...........................................................................12, 14

*Bartholomew v. YouTube, LLC*,
225 Cal. Rptr. 3d 917 (Cal. Ct. App. 2017)............................................................23

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
261 F. Supp. 2d 483 (E.D. Va. 2003) (Hudson, J.)..................................................20

*Beatgasm, LLC v. Punchkick Interactive, Inc.*,
   No. 2:14cv611, 2015 WL 4394260 (E.D. Va. June 25, 2015)...........................................4

*Bennett v. Google, LLC*,
   882 F.3d 1163 (D.C. Cir. 2018) ...............................................................................12, 13

*Biltz v. Google, Inc.*,
   No. 18-00059 DKW, 2018 WL 3340567 (D. Haw. July 6, 2018)...........................5, 6, 7

*Bindra v. Michael Bowman & Assocs., Inc.*,
   58 Va. Cir. 47 (2001) .......................................................................................................27

*Blankenship v. Consolidation Coal Co.*,
   850 F.3d 630 (4th Cir. 2017) ...........................................................................................29

*Bloch v. Exec. Office of the President*,
   164 F. Supp. 3d 841 (E.D. Va. 2016) ..............................................................................29

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) .........................................................................................................25

*Bowman v. Commonwealth*,
   777 S.E.2d 851 (Va. 2015)...............................................................................................21

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*,
   531 U.S. 288 (2001) .........................................................................................................16

*Brown v. Transurban USA, Inc.*,
   144 F. Supp. 3d 809 (E.D. Va. 2015) ..............................................................................26

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976).............................................................................................22

*C.I.T. Corp. v. Guy*,
   195 S.E. 659 (Va. 1938)...................................................................................................25

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   826 P.2d 710 (Cal. 1992) .................................................................................................28

*Carwile v. Richmond Newspapers, Inc.*,
   82 S.E.2d 588 (Va. 1954).................................................................................................21

*Casterlow-Bey v. Google Internet Search Engine Co.*,
   No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215 (W.D. Wash. Sept. 26, 2017)...........15

*Curtis v. Propel Prop. Tax Funding, LLC*,
   No. 3:16-CV-00731-JAG, 2018 WL 717006 (E.D. Va. Feb. 5, 2018)...........................26

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
   948 F. Supp. 436 (E.D. Pa. 1996) ...................................................................................15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).........................................................................................................8

*Darnaa, LLC v. Google Inc.*,
    236 F. Supp. 3d 1116 (N.D. Cal. 2017),
    *aff'd*, --- F. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018) ..............................29

*Davison v. Randall*,
    No. 17-2002 (4th Cir. Jan. 7, 2019) .....................................................17, 18

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) .....................................................15, 17

*Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) (plurality opinion) ..........................................11

*Elliott v. Commonwealth*,
    593 S.E.2d 263 (Va. 2004)..........................................................16

*Elyazidi v. SunTrust Bank*,
    780 F.3d 227 (4th Cir. 2015) ......................................................25

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) .......................................12

*Falkowski v. Imation Corp.*,
    33 Cal. Rptr. 3d 724 (2005) .......................................................28

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978).................................................................17

*Fleming v. Moore*,
    275 S.E.2d 632 (Va. 1981).........................................................22

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    147 Cal. Rptr. 3d 634 (Cal. Ct. App. 2012)....................................28

*Fru-Con Constr. Corp. v. Cty. of Arlington*,
    No. 1:06CV1, 2006 WL 273583 (E.D. Va. Jan. 30, 2006)...................6

*Gonzalez v. Google, Inc.*,
    282 F. Supp. 3d 1150 (N.D. Cal. 2017),
    *appeal docketed*, No. 18-16700 (9th Cir. Sept. 10, 2018) ................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................8

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003).................................................12, 16

*Handy v. Johnson & Johnson*,
    No. 3:17-CV-274-JAG, 2017 WL 6343792 (E.D. Va. Dec. 12, 2017),
    *aff'd*, 724 F. App'x 218 (4th Cir. 2018).........................................8

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ......................................................26

*Hitachi Credit Am. Corp. v. Signet Bank*,
    166 F.3d 614 (4th Cir. 1999) ...........................................................................6

*Horne v. WTVR, LLC*,
    893 F.3d 201 (4th Cir. 2018),
    *cert. denied*, --- S. Ct. ----, 2019 WL 113171 (Jan. 7, 2019) ............................21

*Howard v. Am. Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) .........................................................................15

*Hudgens v. NLRB*,
    424 U.S. 507 (1976)........................................................................................15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
    515 U.S. 557 (1995)........................................................................................10

*In re Kanazeh*,
    No. 1:09mc47, 2010 WL 364565 (E.D. Va. Jan. 29, 2010) ............................24

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................26

*Johnson v. Twitter, Inc.*,
    No. 18CECG00078 (Cal. Super. Ct. June 6, 2018) ........................................17

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .........................................................................13

*Jordan v. Kollman*,
    612 S.E.2d 203 (Va. 2005)..............................................................................20

*Katz v. Odin, Feldman & Pittleman, P.C.*,
    332 F. Supp. 2d 909 (E.D. Va. 2004) ............................................................23

*Key v. Robertson*,
    626 F. Supp. 2d 566 (E.D. Va. 2009) ............................................................16

*Kinderstart.com, LLC v. Google, Inc.*,
    No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) ...........17

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014).......................................................................13

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    302 F. Supp. 3d 541 (S.D.N.Y. 2018),
    *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018) .....................................18

*Lancaster v. Alphabet Inc.*,
    No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016).............14

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007)...................................................10, 11, 15

*Levan v. Capital Cities/ABC, Inc.*,
    190 F.3d 1230 (11th Cir. 1999) ................................................................10

*Lewis v. YouTube, LLC*,
    197 Cal. Rptr. 3d 219 (Cal. Ct. App. 2015) ...........................................28

*Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*,
    92 F. Supp. 3d 435 (E.D. Va. 2015) (Hudson, J.) ....................................9

*Lloyd Corp. v. Tanner*,
    407 U.S. 551 (1972) .................................................................................15

*McCray v. Ardelle Assocs. Inc.*,
    No. 4:14CV158, 2015 WL 3886318 (E.D. Va. June 23, 2015) ........23, 24

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) .................................................................................11

*Mezey v. Twitter, Inc.*,
    No. 1:18-cv-21069-KMM, 2018 WL 5306769 (S.D. Fla. July 19, 2018) .......14

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) ..............................................................................9, 10

*Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ............................................................................18, 19

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...............................................................12, 13

*Nyabwa v. FaceBook*,
    No. 2:17-CV-24, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ................15

*Phillips v. LCI Int'l Inc.*,
    190 F.3d 609 (4th Cir. 1999) ....................................................................2

*Prager Univ. v. Google LLC*,
    No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018),
    *appeal docketed*, No. 18-15712 (9th Cir. Apr. 24, 2018) ..................16, 17, 18

*Pragmatus AV, LLC v. Facebook, Inc.*,
    769 F. Supp. 2d 991 (E.D. Va. 2011) .........................................................7

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) .................................................................................17

*Rojas-Lozano v. Google, Inc.*,
    No. 15-10160-MGM, 2015 WL 4779245 (D. Mass. Aug. 12, 2015) ..........6

*Shaheen v. WellPoint Cos.*,
    No. 3:11-CV-077, 2011 WL 5325668 (E.D. Va. Nov. 3, 2011),
    *aff'd*, 490 F. App'x 552 (4th Cir. 2012) ...................................................23

*Shulman v. Facebook.com*,
  No. 17-764 (JMV), 2017 WL 5129885 (D.N.J. Nov. 6, 2017)..........................15

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015),
  *aff'd*, 697 F. App'x 526 (9th Cir. 2017).................................................14

*Snyder v. Phelps*,
  562 U.S. 443 (2011)..............................................................................9

*Song fi Inc. v. Google, Inc.*,
  108 F. Supp. 3d 876 (N.D. Cal. 2015) ...........................................23, 28

*Song fi, Inc. v. Google Inc.*,
  72 F. Supp. 3d 53 (D.D.C. 2014) ..............................................................5, 6

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)....................................................................................4

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994)..................................................................................9

*Twitter v. Superior Court ex rel. Taylor*,
  No. A154973 (Cal. Ct. App. Aug. 17, 2018) .......................................14

*U.S. Telecom Ass'n v. FCC*,
  855 F.3d 381 (D.C. Cir. 2017)................................................................20

*Watts-Means v. Prince George's Family Crisis Ctr.*,
  7 F.3d 40 (4th Cir. 1993) ................................................................16, 17

*WCC Cable, Inc. v. G4S Tech. LLC*,
  No. 5:17-CV-00052, 2017 WL 6503142 (W.D. Va. Dec. 15, 2017)...............5

*Weaver v. Beneficial Fin. Co.*,
  106 S.E.2d 620 (Va. 1959)......................................................................22

*Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*,
  668 F. Supp. 2d 749 (E.D. Va. 2009) ....................................................25

*Worldwide, LLC v. Google, Inc.*,
  No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029 (M.D. Fla. 2017)...................10, 11

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...........................................................12, 14

*Zhang v. Baidu.com, Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014).................................................10, 11

## STATUTES

28 U.S.C. § 84(a) .........................................................................................6

28 U.S.C. § 1391(b)(1) ................................................................................9

28 U.S.C. § 1391(c)(2)............................................................................................9

28 U.S.C. § 1404(a) .............................................................................1, 4, 5, 29

42 U.S.C. § 1983.................................................................................................20

47 U.S.C. § 153(11)............................................................................................19

47 U.S.C. § 153(24)............................................................................................19

47 U.S.C. § 153(51)............................................................................................19

47 U.S.C. § 202..............................................................................................4, 18

47 U.S.C. § 206..............................................................................................4, 18

47 U.S.C. § 230............................................................................................ *passim*

47 U.S.C. § 230(c)(1)........................................................................11, 12, 13, 14

47 U.S.C. § 230(c)(2)..........................................................................................14

Va. Code Ann. § 18.2-200.1...............................................................................21

Va. Code Ann. § 59.1-198..................................................................................26

Va. Code Ann. § 59.1-200..................................................................................24

Va. Code Ann. § 59.1-200(A).............................................................................26

Va. Code Ann. § 59.1-204..................................................................................24

## RULES

Fed. R. Civ. P. 9(b) ......................................................................................24, 26

Fed. R. Civ. P. 12(b)(2)................................................................................9, 29

Fed. R. Civ. P. 12(b)(3)........................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................................2, 9, 14

## MISCELLANEOUS

5A Charles Alan Wright, et al., *Federal Practice and Procedure* (4th ed. 2018)........................26

Restatement (Second) of Torts (Am. Law Inst. 1977)........................................22

Wireless Broadband Order, 22 F.C.C.R. 5909 (Mar. 23, 2007) ............................................19, 20

Protecting and Promoting the Open Internet, 80 Fed. Reg. 19,738 (Apr. 13, 2015) ....................19

Restoring Internet Freedom, 83 Fed. Reg. 7,852 (Feb. 22, 2018) ................................20

**INTRODUCTION**

Plaintiff seeks to hold YouTube liable for its judgments about what videos may—or may not—appear on its website. In doing so, Plaintiff seeks to transform YouTube, a private online service, into a public forum regulated by the same constitutional standards that apply to the government. This case is entirely without merit. It was filed in the wrong court and should be transferred to the Northern District of California or dismissed for lack of personal jurisdiction and improper venue. Alternatively, Plaintiff's claims should be dismissed because they are barred by federal law and fail to state a viable cause of action.

YouTube allows users around the world to upload and share videos. To create a safe and vibrant community for its users, YouTube makes and enforces rules that prohibit videos and other content that may be unlawful, harmful, or otherwise undesirable. Plaintiff challenges YouTube's application of those content rules. He alleges that YouTube's decision to remove his videos, and ultimately to terminate his YouTube channel, stemmed from its supposed disagreement with Plaintiff's political message. The allegation is baseless: YouTube took action not because of Plaintiff's politics but because his videos repeatedly violated YouTube's Community Guidelines.

But even accepting Plaintiff's factual allegations, his legal claims cannot proceed. As an initial matter, this case does not belong in this Court. Under the clear terms of the governing YouTube Terms of Service Agreement, the parties chose the Northern District of California as the forum for any federal-court litigation. That requires a transfer under 28 U.S.C. § 1404(a). Even apart from the forum-selection clause, however, this case has no connection to Virginia, and Plaintiff has not alleged any viable basis for personal jurisdiction and venue.

On the merits, Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6). Those claims are categorically barred by both the First Amendment and Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, which protect YouTube's editorial decisions about what user content may be published on its online platform. Beyond those overarching federal immunities, Plaintiff fails to state a viable claim for relief. Among other things, YouTube is not a state actor and thus cannot be sued under the First Amendment or the Virginia Constitution, nor is it a "common carrier," and YouTube could not have breached its Terms of Service by doing what that agreement expressly permits: removing videos that YouTube determines violate the rules governing its service.

## BACKGROUND

Through its subsidiary, Defendant YouTube, LLC ("YouTube"), Defendant Google LLC ("Google") operates YouTube, a popular online service for sharing videos and related content. Compl. ¶¶ 15, 18, 23, 26-27. Every day, YouTube users upload thousands of new hours of video and view over a billion hours of content on the service. Compl. ¶ 23. YouTube is a largely free platform for its users. YouTube generates revenue via, among other things, online advertising which it shares with the creators that upload videos. Compl. ¶¶ 24-25, 28.

YouTube allows users to access and use its service provided they agree to and adhere to the YouTube Terms of Service and the YouTube Community Guidelines.[1] The Terms provide that YouTube "reserves the right to decide whether Content violates [its] Terms of Service" and YouTube "reserves the right to remove Content." Adam Decl. Ex. 1 §§ 6.F., 7.B. The Community Guidelines set out various "common-sense rules" about the kind of content that is

---

[1] The Court is free to consider, on a motion to dismiss, documents cited by and integral to the Plaintiff's Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

not allowed on YouTube. That includes, among other things: "hateful content," "harassment and cyberbullying," "scams," violent or graphic material, sexually explicit content, "predatory behavior, stalking, threats, harassment, intimidation, invading privacy, revealing other people's personal information," and "harmful or dangerous content." Compl. ¶ 44; Adam Decl. Ex. 3. The Terms of Service also include a forum-selection provision that requires any dispute "that arises in whole or in part from the Service" to be "decided exclusively by a court of competent jurisdiction located in Santa Clara County, California." Adam Decl. Ex. 1 § 14.

Plaintiff is a citizen of the District of Columbia. Compl. ¶ 13. He describes himself as a journalist covering one topic: "pedophilia, human trafficking and 'Pizzagate.'" Compl. ¶¶ 1, 13. Plaintiff created his channel on YouTube in 2008, which involved him agreeing to the Terms of Service. Compl. ¶ 1; Adam Decl. ¶¶ 4-5. Over the following years, Plaintiff created hundreds of videos, which he uploaded to his YouTube channel. Compl. ¶¶ 1-3. In February 2018, YouTube suspended—and subsequently terminated—Plaintiff's channel for multiple violations of YouTube's Community Guidelines, including for harassment. Compl. ¶ 6. In this lawsuit, Plaintiff contests YouTube's judgments, asserting that his videos did not violate YouTube's content rules. Compl. ¶ 8. He claims instead that YouTube and Google are censoring videos based on what they deem to be "politically correct." Compl. ¶¶ 11, 41. Those conclusory allegations are not supported by anything beyond Plaintiff's disagreement with YouTube's decisions about how to enforce its own guidelines.

Plaintiff now purports to bring causes of action for alleged violations of Plaintiff's free speech rights under the First Amendment of the U.S. Constitution and Article I, § 12 of the Virginia Constitution, for "common carrier discrimination" in violation of the federal

Telecommunications Act, 47 U.S.C. §§ 202(a) and 206, and for violations of the Virginia

Consumer Protection Act of 1977, for defamation *per se*, and for breach of contract.

## ARGUMENT

**I.   PLAINTIFF'S COMPLAINT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA OR DISMISSED FOR LACK OF PERSONAL JURISDICTION AND VENUE**

It is unclear why Plaintiff—a citizen of the District of Columbia who does not even try to

allege that YouTube directed any relevant action toward Virginia—filed his claims in this Court.

But, under the parties' governing agreement, this case does not belong here. It should be

transferred to the Northern District of California or, alternatively, dismissed for lack of personal

jurisdiction and venue.

### A.   Motions to Transfer Based on a Forum-and-Venue-Selection Clause Must Be Granted in All but the Most Unusual Cases

A court may transfer a civil action to another federal judicial district where the case could

have been brought "[f]or the convenience of parties and witnesses" and "in the interest of

justice." 28 U.S.C. § 1404(a); *see generally Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988). But where, as here, a transfer motion is based on a forum-selection clause, certain

"adjustments" to the standard §1404(a) analysis are "required." *Atlantic Marine Constr. Co. v.*

*District Court*, 571 U.S. 49, 62 (2013). "When the parties have agreed to a valid forum-selection

clause, a district court should ordinarily transfer the case to the forum specified in that clause.

Only under extraordinary circumstances unrelated to the convenience of the parties should a

§1404(a) motion be denied." *Id.* (footnote omitted); *see, e.g.*, *Beatgasm, LLC v. Punchkick*

*Interactive, Inc.*, No. 2:14cv611, 2015 WL 4394260, at *2 (E.D. Va. June 25, 2015).

As the Supreme Court has explained, the "presence of a valid forum-selection clause

requires district courts to adjust their usual §1404(a) analysis in three ways." *Atlantic Marine*,

571 U.S. at 63. Two of those are directly relevant to this motion: "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*; *see also, e.g.*, *WCC Cable, Inc. v. G4S Tech. LLC*, No. 5:17-CV-00052, 2017 WL 6503142, at *16 (W.D. Va. Dec. 15, 2017). "Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atlantic Marine*, 571 U.S. at 64; *see also WCC Cable*, 2017 WL 6503142, at *16 (appeal to private-interest factors irrelevant in the face of a valid forum-selection clause).

The upshot of these adjustments is that when a forum-and-venue-selection clause is in play, "a district court may consider arguments about public-interest factors only." *Atlantic Marine*, 571 U.S. at 64. But, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*; *see also, e.g.*, *Apex Sys., LLC v. Schwartz*, No. 3:16-cv-393, 2016 WL 9412462, at *1 (E.D. Va. Aug. 5, 2016). Applying these principles, federal courts routinely transfer to the Northern District of California cases filed in other districts by YouTube users. *See, e.g.*, *Biltz v. Google, Inc.*, No. 18-00059 DKW, 2018 WL 3340567 (D. Haw. July 6, 2018); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 61-63 (D.D.C. 2014). The same result is appropriate here.

**B.      The Forum Selection Clause in the Terms of Service is Valid and Applies to the Plaintiff's Claims in this Case**

This case is governed by the YouTube Terms of Service Agreement. Compl. ¶ 30 (alleging that YouTube's Terms of Service "govern a member's use of the platform"). Accepting that agreement is a prerequisite for, among other things, creating a YouTube account and uploading videos to YouTube. Adam Decl. ¶ 4. Plaintiff agreed to the Terms of Service when he

created his YouTube channel and when he posted videos to that channel. Adam Decl. ¶¶ 3-4. *Accord Biltz*, 2018 WL 3340567 (YouTube user bound by forum-selection clause of YouTube Terms of Service); *Song fi*, 72 F. Supp. 3d at 61-63 (same); *Rojas-Lozano v. Google, Inc.*, No. 15-10160-MGM, 2015 WL 4779245, at *4 (D. Mass. Aug. 12, 2015) (enforcing Google's forum-selection clause); *accord Fru-Con Constr. Corp. v. Cty. of Arlington*, No. 1:06CV1, 2006 WL 273583, at *2 (E.D. Va. Jan. 30, 2006) (taking an action evincing an intent to enter into a contract constitutes acceptance of a binding forum selection clause).

At all relevant times, the governing Terms of Service agreement required that litigation relating to YouTube be brought in Northern California. The operative version as of February 2018, when Plaintiff's channel was suspended and terminated, states that "[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California." Adam Decl. Ex. 1 § 14.[2] This provision plainly encompasses the claims at issue here. There can be no doubt that Plaintiff's lawsuit—which challenges YouTube's decision to remove Plaintiff's videos and terminate his YouTube account—"arises from" the YouTube Service.

There can be no doubt therefore that Plaintiff has agreed to litigate claims like this in the Northern District of California. *Accord Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614,

---

[2] When Plaintiff first created his YouTube channel in October 2008, the operative agreement had a similar forum-selection clause, the only difference in that provision being that it designated San Mateo County, California as the required forum. (The Northern District of California encompasses San Mateo County. *See* 28 U.S.C. § 84(a).) The 2008 agreement also put Plaintiff clearly on notice that the terms could change over time: "YouTube reserves the right to amend these Terms of Service at any time and without notice, and it is your responsibility to review these Terms of Service for any changes. *Your use of the YouTube Website following any amendment of these Terms of Service will signify your assent to and acceptance of its revised terms.*" Adam Decl. Ex. 2 § 11 (emphasis added). Plaintiff unquestionably continued to use YouTube as new versions of the Agreement came into effect. Compl. ¶¶ 2-3.

628 (4th Cir. 1999) (choice of law clause can be broad enough to encompass contract-related tort claims). As such, Plaintiff gave up any argument that his unilateral choice of this Court as the forum should be given any weight in the 1404(a) analysis. *See Atlantic Marine*, 571 U.S. at 64.

Nor is there any public interest factor that favors litigation in this Court over the Northern District of California. To the contrary, this case has no connection whatsoever with Virginia or with this District.[3] *See, e.g.*, *Biltz*, 2018 WL 3340567, at *7 (explaining in a similar case that "it is in the public interest for courts in the Northern District of California to hear this diversity action that barely touches Hawaii"); *cf. Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) ("[l]eft unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads" and therefore transfer serves the "interest of justice").

Simply put, this is not one of the "most unusual cases" where the parties' forum-selection agreement should not be given controlling weight. *Atlantic Marine*, 571 U.S. at 66. The Court therefore should transfer the case to the Northern District of California.

### C.      In the Alternative, this Court Should Dismiss for Lack of Personal Jurisdiction and Venue

Even apart from the forum-selection clause, dismissal is warranted because Plaintiff has not alleged any proper basis for personal jurisdiction in Virginia—and thus for venue in this District.

---

[3] As noted above, Plaintiff is not a Virginia citizen, and he does not allege that he has any ties to this State. Likewise, neither Google nor YouTube is headquartered or incorporated in Virginia, and the Complaint does not allege any connection between the actions they took against Plaintiff's videos and the Commonwealth of Virginia. Compl. ¶¶ 14, 16, 20. Given that, there is no "local interest in having localized controversies decided at home" that would warrant overriding the parties' agreed-upon choice of forum. *Atlantic Marine*, 571 U.S. at 63 n.6.

The only form of personal jurisdiction that Plaintiff even tries to invoke in his Complaint is general jurisdiction. Compl. ¶ 20. But even taking the allegations in the Complaint as true, there is no basis for such jurisdiction in this case. Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also id.* at 127 (general jurisdiction may be exercised only where a defendant is "essentially at home in the forum State"). The "paradigm" forums for general jurisdiction over a corporate defendant are its "place of incorporation and principal place of business." *Id. at* 137; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). But, as the Complaint acknowledges, Google and YouTube are incorporated in Delaware and headquartered in California. Compl. ¶¶ 14, 16; *accord Handy v. Johnson & Johnson*, No. 3:17-CV-274-JAG, 2017 WL 6343792, at *3 (E.D. Va. Dec. 12, 2017) (no general personal jurisdiction over Toyota or Johnson & Johnson, companies that are neither incorporated nor headquartered in Virginia), *aff'd*, 724 F. App'x 218 (4th Cir. 2018).

Where that is the situation, a corporate defendant can be subject to general personal jurisdiction only in "an exceptional case." *Daimler*, 571 U.S. at 139 n.19. But Plaintiff offers no allegations that even try to meet that standard. Unadorned assertions that Google and YouTube transact business in Virginia, have users in Virginia, and derive significant revenue from Virginia, Compl. ¶¶ 15-17, 20, are not remotely sufficient. *See Daimler*, 571 U.S. at 138 (rejecting as "unacceptably grasping" the argument that a corporation is subject to general jurisdiction in every state where it "engages in a substantial, continuous, and systematic course of business"); *accord Adhikari v. KBR, Inc.*, No. 115CV1248JCCTCB, 2016 WL 4162012, at *7 (E.D. Va. Aug. 4, 2016) (no general jurisdiction over a Delaware company headquartered in Texas, even though company leased an office in Virginia). On this issue, there is no factual

dispute to resolve, and the Court can dismiss the case under Rule 12(b)(2) based on the

Complaint alone. *See Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d

435, 439 (E.D. Va. 2015) (Hudson, J.) ("When . . . the court decides personal jurisdiction

without an evidentiary hearing, it may do so based solely on the motion papers, supporting legal

memoranda and the relevant allegations of the complaint.").[4]

## II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY FEDERAL LAW

Even if this case could proceed in this Court, it fails as a matter of law and should be

dismissed under Rule 12(b)(6). To begin, Plaintiff's claims run headlong into two overarching

federal immunities that preclude liability for YouTube's content-moderation efforts: the First

Amendment and Section 230 of the CDA.

### A.    Plaintiff's Claims Are Barred by the First Amendment

In this case, Plaintiff seeks to hold YouTube liable for how it applied its content

regulations. Such claims are barred by the First Amendment. *Accord Snyder v. Phelps*, 562 U.S.

443, 451-52 (2011) (First Amendment provides immunity against civil liability). The First

Amendment protects "the exercise of editorial control and judgment" by those who publish third-

party content. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). That includes

decisions about how and whether to present third-party content on a given platform. *Id.*; *see also*

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 636 (1994) (cable operators engage in protected

---

[4] For the same reason, this Court is not a proper venue for this case, and Plaintiff's claims may be dismissed under Fed. R. Civ. P. 12(b)(3). The only alleged basis for venue is the combined operation of 28 U.S.C. § 1391(b)(1) and (c)(2). Compl. ¶ 21. But those statutes are predicated on the proper exercise of personal jurisdiction. They provide that venue exists in the judicial district(s) where any defendant resides, which for corporate entities means the districts where they are subject to personal jurisdiction in the given action. 28 U.S.C. § 1391(c)(2). Because YouTube and Google are not subject to personal jurisdiction in this District in this action, Sections 1391(b)(1) and (c)(2) do not authorize venue either.

"editorial discretion" by selecting television programming); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 573-74 (1995) (parade organizers engage in protected speech by selecting which marchers may participate in parade).

"Since *all* speech inherently involves choices of what to say and what to leave unsaid, one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say.'" *Hurley*, 515 U.S. at 573 (citations omitted); *accord Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1243 (11th Cir. 1999) ("The decision to air the interview of one person but not another is at heart an editorial decision."). This protection equally applies to the editorial choices made by online service providers. *See, e.g.*, *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (search engine protected by First Amendment for excluding search results); *e-ventures Worldwide, LLC v. Google, Inc.*, No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029, at *4 (M.D. Fla. 2017) (same); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007) (same).

These principles bar Plaintiff's claims. Plaintiff seeks to hold Google and YouTube liable for what he characterizes as their politically motivated decisions not to allow Plaintiff to post certain kinds of video content on YouTube. But these are exactly the kinds of decisions that the First Amendment protects. They are analogous to decisions made by publishers in selecting the "material to go into a newspaper, and the . . . limitations on the size and content of the paper, and treatment of public issues and public officials." *Tornillo*, 418 U.S. at 258; *accord e-ventures*, 2017 WL 2210029, at *4 ("determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication").

The First Amendment does not allow Plaintiff to countermand YouTube's editorial judgments—and thereby to direct the content that appears on YouTube—by ordering Defendants to reinstate his account or publish videos that YouTube has determined violate its standards. *Accord Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC*, 518 U.S. 727, 737-38 (1996) (plurality opinion) (because "the editorial function itself is an aspect of 'speech,' and a court's decision that a private party, say, the station owner, is a 'censor,' could itself interfere with that private 'censor's' freedom to speak as an editor" (citation omitted)); *Langdon*, 474 F. Supp. 2d at 629-30 (First Amendment prohibits order compelling search engines to "'honestly' rank Plaintiff's websites"). And that is so regardless of whether YouTube's judgments "are fair or unfair, or motivated by profit or altruism." *e-ventures*, 2017 WL 2210029, at *4.

Indeed, First Amendment protection is especially strong in this case, given the Complaint's (wholly unfounded) allegations that YouTube removed Plaintiff's videos because it disagreed with their political message. These allegations are false, but taking them as true would mean only that YouTube's judgments reflected political speech—the "core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). To hold YouTube liable for making what Plaintiff characterizes a political determinations "would plainly 'violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.'" *Zhang*, 10 F. Supp. 3d at 440 (alteration in original) (citation omitted).

## B. Plaintiff's Claims Are Barred by Section 230 of the CDA

Reinforcing the protection provided by the First Amendment, Plaintiff's claims are also barred by Section 230(c)(1) of the Communications Decency Act. This provision bars any claim that would treat the provider of an "interactive computer service" "as the publisher or speaker of

any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As the Fourth Circuit has explained, Section 230(c)(1) "creates a federal immunity" that "precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). The statute, that is, "forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Id.* at 331; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) (same).

"To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope." *Nemet*, 591 F.3d at 254. Courts routinely apply the statute to dismiss claims arising from a service provider's decisions about how to manage third-party content on its platform, including the decision to "withdraw" such content from publication. *See Zeran*, 129 F.3d at 330; *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009); *see also, e.g.*, *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471-72 (3d Cir. 2003). The Fourth Circuit has instructed courts to "resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from "having to fight costly and protracted legal battles.'" *Nemet*, 591 F.3d at 254-55 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc)).

The statute mandates dismissal where: (1) the defendant is a provider or user "of an interactive computer service;" (2) the information underlying plaintiff's claims was "provided by another information content provider"—that is, by someone other than the defendant; and (3) the

complaint seeks to hold the defendant liable as the "publisher or speaker" of the information. 47 U.S.C. § 230(c)(1); *accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014).

On the first element, Google and YouTube are paradigmatic "interactive computer service" providers, *see* Compl. ¶¶ 15, 18, and have been found to be such in countless cases. *See, e.g.*, *Bennett*, 882 F.3d at 1167 ("[A]s many other courts have found, Google qualifies as an "interactive computer service" provider because it "provides or enables computer access by multiple users to a computer server."); *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va.), *aff'd*, 624 F. App'x 81 (4th Cir. 2015) (same); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163 (N.D. Cal. 2017) (same as to YouTube), *appeal docketed*, No. 18-16700 (9th Cir. Sept. 10, 2018).

The second element is also satisfied. Plaintiff seeks to hold YouTube liable for the removal of videos created and posted by Plaintiff: information provided by "another information content provider." The Complaint does not allege that YouTube played any part in the "creation or development" of any of Plaintiff's videos—nor could it. *See, e.g.*, *Klayman*, 753 F.3d at 1358 ("a website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online"); *Nemet*, 591 F.3d at 256-58; *see also Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 409-10 (6th Cir. 2014) (explaining that to "develop" content "means something more involved than merely displaying or allowing access to content created by a third party").

Finally, Plaintiff's claims seek to hold YouTube liable for deciding to remove Plaintiff's videos from the platform—that is, in YouTube's capacity as "publisher" of user-created content. The Complaint alleges that Defendants violated federal and Virginia law by "censor[ing]" or "purg[ing]" videos posted by Plaintiff on the basis of their politically conservative content. *E.g.*,

Compl. ¶¶ 5, 11, 41-42, 53, 59. Accepting those unfounded allegations as true for purposes of this motion, such decisions about "whether to publish, withdraw, postpone or alter content" are exactly what Section 230 protects. *Zeran*, 129 F.3d at 330.

Indeed, courts have consistently applied Section 230(c)(1) to reject claims brought against online service providers by plaintiffs who have had their content removed from such services. *See, e.g.*, *Twitter v. Superior Court ex rel. Taylor*, No. A154973 (Cal. Ct. App. Aug. 17, 2018) (Section 230 bars claims arising from Twitter's suspension of user's accounts for policy violations); *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (same); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (holding that Facebook's blocking of plaintiff's page is "publisher conduct immunized by the CDA"), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (dismissing claims based on YouTube's removal of plaintiff's videos because "to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher" (citation omitted)). Plaintiff's claims here fail for the same reasons.[5]

## III.    PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION

Even apart from the federal immunities discussed above, none of Plaintiff's causes of action states a viable claim under Rule 12(b)(6).

---

[5] Section 230(c)(2) of the CDA, 47 U.S.C. § 230(c)(2), provides a separate immunity that would also apply to this case. For purposes of this motion, however, YouTube raises only the immunity afforded by Section 230(c)(1), which is independently sufficient to dispose of Plaintiff's claims. *See generally Barnes*, 570 F.3d at 1105 (explaining relationship between Section 230(c)(1) and (c)(2)).

## A.  Plaintiff Cannot Assert Claims Under the Federal or Virginia Constitutions

To begin, Plaintiff seeks to hold YouTube liable for infringing his right to free speech under the First Amendment and the Virginia Constitution. But these claims invert the applicable First Amendment rights in this case. As discussed above, YouTube is *protected* by the First Amendment for the judgments it makes about what content to allow on its platform; YouTube is not a state actor subject to constitutional scrutiny for those private decisions.

"It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *see also Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1972) ("[I]t must be remembered that the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only."); *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) (explaining that it was "groundless" to bring a First Amendment claim against a private party because "the constitutional protection[] of free speech . . . appl[ies] only against governmental action, and not against private action").[6]

Recognizing this bedrock principle, an unbroken line of cases has held that the First Amendment does not regulate private online services. *See, e.g.*, *Howard v. Am. Online, Inc.*,

---

[6] *See also, e.g.*, *Nyabwa v. FaceBook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (Facebook is not a state actor); *Shulman v. Facebook.com*, No. 17-764 (JMV), 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (same); *Casterlow-Bey v. Google Internet Search Engine Co.*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017) (holding that Google "is not a state actor and so is not liable under § 1983"), *report and recommendation adopted*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 441-45 (E.D. Pa. 1996) ("[S]ince AOL is not a state actor and there has been no state action by AOL's activities . . . [plaintiff] has no right under the First Amendment to the United States Constitution to send unsolicited e-mail to AOL's members."); *Langdon*, 474 F. Supp. 2d at 631-32 (finding that Google is a private entity "not subject to constitutional free speech guarantees").

208 F.3d 741, 754 (9th Cir. 2000) (affirming dismissal of First Amendment claims against AOL where allegations that AOL was a "quasi-public utility" were "insufficient to hold that AOL is an 'instrument or agent' of the government"); *Green*, 318 F.3d at 472 ("AOL is a private, for profit company and is not subject to constitutional free speech guarantees."); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) (Google and YouTube are not "state actors that must regulate the content on their privately created website in accordance with the strictures of the First Amendment"), *appeal docketed*, No. 18-15712 (9th Cir. Apr. 24, 2018).

The same rule dooms Plaintiff's claim under Virginia's constitution. "Article I, Section 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment." *Elliott v. Commonwealth*, 593 S.E.2d 263, 269 (Va. 2004); *see also Key v. Robertson*, 626 F. Supp. 2d 566, 583 (E.D. Va. 2009) (holding that Article I, Section 12 of Virginia's constitution only applies to government or state action and dismissing constitutional claims against private entity Regent University).

Plaintiff cannot escape this conclusion with the bare assertion that YouTube acted "under color of state law." Compl. ¶ 47. Private parties may only be treated as state actors if, and only if, there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (citation omitted); *accord Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 43 (4th Cir. 1993) (setting forth tests for treating private entity's conduct as state action). The Complaint invokes the "public function" test, alleging that YouTube engages in an "exclusively and traditionally public function by regulating free speech within a public forum." Compl. ¶¶ 47, 58. But this argument fails as a matter of law. Under this

test, private conduct may be treated as state action only if that action has been both (1) delegated by the government to the private party and (2) "traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (citation omitted); *see also Watts-Means*, 7 F.3d at 43. There is nothing remotely like that alleged here.

Plaintiff does not—and could not—allege that YouTube, in removing Plaintiff's videos and channel, acted pursuant to any delegation by the federal or state government. Moreover, Plaintiff cannot show that YouTube, in regulating its private platform, was engaged in a *traditionally and exclusively* governmental function. As the Supreme Court has explained, "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). "This category is very narrow." *DeBauche*, 191 F.3d at 508. Operating a private online service that hosts video content does not come within it. *See, e.g.*, *Prager*, 2018 WL 1471939, at *8; *Johnson v. Twitter, Inc.*, No. 18CECG00078 (Cal. Super. Ct. June 6, 2018); *Kinderstart.com, LLC v. Google, Inc.*, No. C 06-2057 JF (RS), 2007 WL 831806, at *13-15 (N.D. Cal. Mar. 16, 2007); *cf. DeBauche*, 191 F.3d at 508-09 (holding that the hosting and broadcasting of political speech "could never be the exclusive prerogative of the government"). Because YouTube does not stand in the shoes of the state when it regulates the content on its platform, Plaintiff's constitutional claims must be dismissed.

Plaintiff cannot change that result by labelling YouTube a "public forum." Compl. ¶¶ 9, 44, 48, 56, 58, 75. The Fourth Circuit has recently made clear that, in the First Amendment context, the term "public forum" refers to property that is owned or controlled by the government. "[W]hat renders the fora 'public' . . . is that *the government* has made the space available . . . for 'expressive public conduct' or 'expressive activity.'" *Davison v. Randall*,

No. 17-2002 (4th Cir. Jan. 7, 2019) (emphasis added); *see also id.* ("private property, whether tangible or intangible, constituted a public forum when, for example, *the government* retained substantial control over the property under regulation or by contract" (emphasis added)); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 566 (S.D.N.Y. 2018), *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018) (same). Plaintiff does not allege that YouTube's platform is or ever was government owned or controlled. And neither YouTube's wide availability nor its general commitment to encouraging creative expression transform it into a public forum constrained by the same First Amendment rules that limit the government. *See Prager*, 2018 WL 1471939, at *8 (holding that Google and YouTube are not state actors "merely because they hold out and operate their private property as a forum for expression of diverse points of view"); *cf. Arlosoroff v. NCAA*, 746 F.2d 1019, 1021 (4th Cir. 1984) ("The fact that NCAA's regulatory function may be of some public service lends no support to the finding of state action, for the function is not one traditionally reserved to the state.").

Plaintiff's constitutional claims have no legal basis, and his unprecedented effort to flip the applicable First Amendment rights in this case should be rejected.

### B.    Plaintiff's Claim Under the Telecommunications Act Fails

Title II of the Telecommunications Act makes it unlawful for a "common carrier" to make unjust or unreasonable discriminations in providing their communication services. 47 U.S.C. § 202; *see also id.* § 206. Plaintiff's claim under this provision fails for the simple reason that YouTube is not a common carrier. *See, e.g.*, *Am. Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 855-57 (E.D. Va. 1999) (holding that AOL is not subject to the anti-discrimination provisions of the Communications Act because it is not a common carrier).

The Telecommunications Act "regulates telecommunications carriers, but not information-service providers, as common carriers." *Nat'l Cable & Telecommc'ns Ass'n v.*

*Brand X Internet Servs.*, 545 U.S. 967, 975 (2005).[7] YouTube is plainly an "information service" that is not subject to common carrier regulation. An "information service" is "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications." 47 U.S.C. § 153(24). Such a service "provides a capability for manipulating and storing information." *Brand X*, 545 U.S. at 978. That describes YouTube to a tee, as even the allegations in the Complaint make clear. "YouTube is a leading online platform for creating, developing, uploading, searching for, viewing and sharing videos." Compl. ¶ 15. In this way, YouTube enables users to generate, store, retrieve, and make available information via telecommunications. And, unlike a common carrier, YouTube expressly regulates the content on its service subject to a range of content-based rules. Compl. ¶¶ 30-35; Adam Decl. Ex. 1 §§ 6.E., 7.B.[8]

This conclusion is confirmed by the FCC's authoritative interpretation of the statute. In 2015, the FCC reclassified broadband Internet access service ("BIAS") as a telecommunications service subject to common carrier regulation. Protecting and Promoting the Open Internet, 80 Fed. Reg. 19,738 (Apr. 13, 2015). In so doing, the FCC drew a sharp distinction between

---

[7] The statute defines the term "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy." 47 U.S.C. § 153(11).

[8] The Complaint mentions in passing Google's operation of Google Fiber and Google Project Fi, Compl. ¶ 68, but the operation of those networks has nothing to do with the claims in this case, nor could those references be sufficient to convert Google as a whole (much less YouTube) into a common carrier. *See* 47 U.S.C. § 153(51) ("A telecommunications carrier shall be treated as a common carrier under this [Act] only to the extent that it is engaged in providing telecommunications services . . . ."); *see also* Wireless Broadband Order, 22 F.C.C.R. 5909, 5919 ¶ 50 (Mar. 23, 2007) (concluding that a "service provider is to be treated as a common carrier for the telecommunications services it provides, but it cannot be treated as a common carrier with respect to other, non-telecommunications services it may offer, including information services").

BIAS—"mass-market retail service by wire or radio that provides the capability to transmit data to and receive data from all or substantially all Internet endpoints"—and "edge provider[s]," i.e., those individuals or entities that provide "any content, application, or service over the Internet." *Id.* at 19,847. The Order makes clear that providers like Google and YouTube are within the second category, which cannot, as a matter of law, be treated as common carriers. *Id.* at 19,790. A subsequent order of the FCC—which abandoned treating even BIAS providers as common carriers—specifically identified YouTube as a "major edge provider." Restoring Internet Freedom, 83 Fed. Reg. 7,852, 7,884 ¶ 152 (Feb. 22, 2018). In upholding the FCC's 2015 Order, the D.C. Circuit explained that web platforms such as Google and YouTube, "in contrast with broadband ISPs, *are not considered common carriers* that hold themselves out as affording neutral, indiscriminate access to their platform without any editorial filtering." *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (emphasis added).

Plaintiff's claim for common carrier discrimination should be dismissed with prejudice.[9]

## C.     Plaintiff's Claim of Defamation Per Se Fails as a Matter of Law

"In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005); *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 501 (E.D. Va. 2003) (Hudson, J.).

---

[9] Plaintiff also purports to assert a common-carrier discrimination claim against YouTube under 42 U.S.C. § 1983. Compl. ¶ 65. As discussed in Part II.C., *supra*, however, YouTube is not a state actor, did not act under color of law, and thus cannot be held liable under Section 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (Section 1983 "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'" (citation omitted)).

Plaintiff's claim fails as a matter of law because he has not plead the existence of any actionable statement, much less one that was published to a third party.[10]

1.    Plaintiff Fails to Plead an Actionable Defamatory Statement

Plaintiff's theory of defamation appears to be that YouTube accused him of violating the Terms of Service. Compl. ¶ 83(c). As a matter of law, however, such a statement does not give rise to a viable claim of defamation *per se*.

In Virginia law,

> defamatory words which are actionable per se are: (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade.

*Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954); *Horne v. WTVR, LLC*, 893 F.3d 201, 207 n.2 (4th Cir. 2018), *cert. denied*, --- S. Ct. ----, 2019 WL 113171 (Jan. 7, 2019). The statements at issue here do not fall into any of those categories. At most, YouTube suggested that Plaintiff violated the YouTube Terms of Service. Compl. ¶ 6. But it is well settled that breach of contract is not a crime (*see* Va. Code Ann. § 18.2-200.1; *Bowman v. Commonwealth*, 777 S.E.2d 851, 855 (Va. 2015)), and general statements that someone has failed to abide by their contractual obligations thus are not actionable as defamation per se.

---

[10] Plaintiff's defamation claim—and his other state law claims—fail under Virginia law, the law he invokes in the Complaint. Accordingly, there is no need for a choice of law analysis in connection with this motion. Still, there is no obvious reason why Virginia law should apply to this case: as noted, Plaintiff is not a Virginia resident, and the claims did not arise in Virginia. Moreover, under the clear terms of the governing YouTube Terms of Service agreement, Plaintiffs' contract-based claim is governed by California law. Adam Decl. Ex. 1 § 11.

*Accord Weaver v. Beneficial Fin. Co.*, 106 S.E.2d 620, 621 (Va. 1959) (not libelous per se to publish a statement stating that plaintiff had "[a]t no time . . . honored his contract promptly").

Plaintiff may attempt to argue that YouTube somehow imputed that he was unfit for employment or prejudiced him in his profession as an investigative journalist. This argument fails. For a statement to be actionable defamation *per se* in this manner, there must be a nexus between the supposedly defamatory statements and the person's occupation. *Fleming v. Moore*, 275 S.E.2d 632, 636 (Va. 1981). The words must be damaging, and they must be "necessarily hurtful" to the plaintiff in his or her profession—not just generally disparaging. *Id.*; *see also* Restatement (Second) of Torts § 573 cmt. e (Am. Law Inst. 1977) ("Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession.").

Here, however, Plaintiff has not identified how or why an accusation that he breached YouTube's Terms of Service could impute to him any characteristic damaging to an investigative journalist. Nor could he. Although we have found no published decisions of the courts of Virginia that have determined what statements are "necessarily hurtful" to an investigative journalist, out-of-state cases addressing this question have focused that inquiry on whether the defendant accuses the journalist of engaging in libelous journalism or otherwise lacking journalistic integrity. *See, e.g.*, *Buckley v. Littell*, 539 F.2d 882, 896-97 (2d Cir. 1976). The statement that Plaintiff violated the YouTube Terms of Service makes no such accusation. This omission is only reinforced by Plaintiff's contention that YouTube's Terms of Service and Community Guidelines do not forbid defamation, libel, or slander. Compl. ¶ 44 n.3.

Unsurprisingly, therefore, courts have found that nearly identical statements were not defamatory as a matter of law. For example, in *Bartholomew v. YouTube, LLC*, YouTube placed a message where plaintiff's video previously had been stating "[t]his video has been removed because its content violated YouTube's Terms of Service." 225 Cal. Rptr. 3d 917, 925 (Cal. Ct. App. 2017). The Court of Appeal squarely held that this was not actionable defamation, because the statement was not defamatory either on its face or in light of YouTube's Community Guidelines. *Id.* at 925-28 (observing that an "accusation of a breach of contract is usually not defamatory in itself"); *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 886 (N.D. Cal. 2015) (holding that the same statement is not defamatory on its face). The same is true here.

2.  Plaintiff Fails to Plead Publication to a Third Party

Plaintiff's defamation claim also fails for a separate reason: the Complaint fails to identify any published statements seen by a third party that are purportedly defamatory. Plaintiff alleges that YouTube communicated with him in messages sent directly, and solely, to Plaintiff. Compl. ¶¶ 6-7. But under Virginia law, statements made only to a plaintiff are not "published"— to give rise to a possible defamation claim, the statement must be disseminated to a third party. *See Shaheen v. WellPoint Cos.*, No. 3:11-CV-077, 2011 WL 5325668, at *4 (E.D. Va. Nov. 3, 2011), *aff'd*, 490 F. App'x 552, 555 n.2 (4th Cir. 2012); *McCray v. Ardelle Assocs. Inc.*, No. 4:14CV158, 2015 WL 3886318, at *6 (E.D. Va. June 23, 2015).

The Complaint also alludes to a notice posted in connection with Plaintiff's YouTube channel that Plaintiff's "account has been terminated for a violation of YouTube's Terms of Service." Compl. ¶ 6. Plaintiff does not identify where he encountered this statement, but the mere fact that such a statement may have appeared somewhere on YouTube's system says nothing about whether members of the public actually saw the statement. *Accord Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) (explaining that a mailed

letter is not published if it is never opened or read by anyone). Courts have dismissed defamation claims under similar circumstances. For example, in *In re Kanazeh*, the court held that a newspaper's alleged threats to publish supposedly defamatory statements were insufficient to state a claim for defamation. No. 1:09mc47, 2010 WL 364565, at *6 (E.D. Va. Jan. 29, 2010). The court held that the defamatory statement must be actually communicated to a third party, and the claim failed because plaintiff made no allegation that this publication had occurred. *Id.* Likewise, in *McCray*, the court found that the allegation that defendants "uttered and/or communicated . . . falsehoods concerning Plaintiff to *third parties*" described only a "vague and generalized statement," and "failed to name the specific party to whom the defamatory statement was communicated," establishing, "at most, a mere possibility that publication occurred." 2015 WL 3886318, at *6. In dismissing the claim, the Court noted that alleging the "mere possibility of misconduct is insufficient to meet the federal pleading standard." *Id.* at *6-7 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). That is the most the Complaint does here, and it is not enough.

### D. Plaintiff Cannot Bring a Claim Against YouTube Under the Virginia Consumer Protection Act

The Virginia Consumer Protection Act ("VCPA") creates a cause of action for misrepresentations in "consumer transaction[s]." Va. Code Ann. §§ 59.1-200, 59.1-204. Plaintiff cannot state a claim under the VCPA for several independent reasons. First, he is not a resident of Virginia and no activities relevant to this Complaint took place in Virginia. Second, Plaintiff does not identify any false or misleading statements that he relied upon about YouTube's practices, much less with the particularity required by Rule 9(b). Third, there has not been any "consumer transaction" in this case.

1. <u>Plaintiff Cannot Apply the VCPA Extraterritorially</u>

A state's legislative power is "constrained by the need to respect the interests of other States." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996). It therefore is presumed that state laws apply only within the state's territorial jurisdiction, and courts do not give statutes extraterritorial effect by implication. *Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*, 668 F. Supp. 2d 749, 752 (E.D. Va. 2009). Here, Plaintiff has offered no basis for applying a Virginia statute. Plaintiff does not allege that he lives in Virginia, was ever located there, or that he was injured in Virginia by YouTube's actions. Indeed, the only apparent relationship between Virginia and this suit is Plaintiff's choice to file it here, in disregard for the parties' agreement. *See supra* Part I.

Applying the VCPA to reach the out-of-state transactions at issue in this case would raise serious constitutional questions and should be avoided. *See, e.g.*, *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) ("[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."). Courts routinely dismiss claims brought under state laws that do not apply to the out-of-state transactions at issue. *See, e.g.*, *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237-38 (4th Cir. 2015) (affirming dismissal of Maryland consumer protection laws brought against Georgia bank by a Virginia plaintiff who allegedly suffered injury in Virginia); *Westwind*, 668 F. Supp. 2d at 752 (construing Texas aircraft lien statute not to apply extraterritorially to conduct in Virginia); *accord C.I.T. Corp. v. Guy*, 195 S.E. 659, 661 (Va. 1938) ("[s]tate statutes *ex proprio vigore* operate only within the limits of their several states"). That is the situation here.

2. <u>Plaintiff's VCPA Claim Is Not Pleaded with Particularity</u>

VCPA claims involve claims of fraud, and therefore must comply with the heightened pleading standards of Rule 9(b). *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 845 (E.D. Va. 2015). Fed. R. Civ. P. 9(b) requires that allegations of fraud must be made with particularity. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 628 (E.D. Va. 2000). That requires Plaintiff to state the "time, place, and contents of the false representations or omissions, as well as the identity of the person" making the representation or omission. *Bank of Southside Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 448 (E.D. Va. 2007) (citing 5A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1297 (4th ed. 2018)); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Plaintiff must also specifically allege reliance on the alleged false representation. *Curtis v. Propel Prop. Tax Funding, LLC*, No. 3:16-CV-00731-JAG, 2018 WL 717006, at *3 (E.D. Va. Feb. 5, 2018); *Adardour v. Am. Settlements, Inc.*, No. 1:08cv798(AJT/TRJ), 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases), *aff'd*, 382 F. App'x 249 (4th Cir. 2010). Plaintiff has not come close to meeting these standards here. The Complaint does not identify any statement that was supposedly false, nor does Plaintiff identify where or when YouTube made such statements. And Plaintiff certainly has not alleged that he detrimentally relied on any such statement. Rule 9(b) requires more, and the VCPA claim can be dismissed for this reason alone.

3. <u>Plaintiff Fails to Identify a "Consumer Transaction"</u>

Even if the VCPA claim applied here, Plaintiff's claim would fail on the merits. The VCPA applies only to "acts or practices committed by a supplier in connection with ***a consumer transaction***." Va. Code Ann. § 59.1-200(A) (emphasis added). As relevant here, a "consumer transaction" must involve goods or services "used primarily for personal, family or household purposes." Va. Code Ann. § 59.1-198. Plaintiff asserts that he is a consumer of goods or services

"to be used by [plaintiff] for personal purposes." Compl. ¶¶ 87-88. But Plaintiff pleads no facts that bring his relationship with YouTube within this definition and the facts he pleads actually contradict his conclusory assertion. Plaintiff alleges that he is a journalist who used YouTube to reach an audience and earn substantial revenue. Compl. ¶¶ 3, 13. Nothing about that connotes a consumer transaction; after all, consumers do not typically earn money from their interaction with vendors. Where, as here, the transactions are "merchant-to-merchant," they are not within the scope of the VCPA. *Baker v. Elam*, 883 F. Supp. 2d 576, 579 (E.D. Va. 2012) (dog breeder purchasing supplies used for dog breeding did not involve goods for personal use and fell outside the scope of the VCPA); *Bindra v. Michael Bowman & Assocs., Inc.*, 58 Va. Cir. 47 (2001) (where a commercial entity purchases the goods of another commercial entity, it is not a consumer transaction). That is an independent reason to dismiss his VCPA claim.

### E.  Plaintiff's Breach of Contract Claim Fails

Plaintiffs' breach of contract claim is apparently based solely on the implied covenant of good faith and fair dealing, rather than on the actual provisions of YouTube's Terms of Service. Compl. ¶ 95. Either way, however, this claim is defeated by express terms of the agreement.

Plaintiff contends that YouTube breached the governing Terms of Service when it removed Plaintiff's videos and terminated his channel. But these actions are specifically authorized by the Terms of Service, under which YouTube may:

(1) "discontinue any aspect of the Service at any time," Adam Decl. Ex. 1 §4.J;

(2) "remove Content without prior notice," *id.* § 6.F;

(3) "decide whether Content violates these Terms of Service for reasons other than copyright infringement," *id.* § 7.B.; and

(4) "at any time, without prior notice and at its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service," *id.*

In short, the very actions that Plaintiff now claims breached the implied covenant are ones that the agreement itself expressly gives YouTube the right to perform. Under black-letter California law, that defeats any invocation of the implied covenant. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (1992) (where there are certain "acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct" (citation omitted)); *Falkowski v. Imation Corp.*, 33 Cal. Rptr. 3d 724, 739 (2005) (It is a "fundamental rule that an implied contract cannot override the terms of an express agreement between the parties."); *accord Song fi*, 108 F. Supp. 3d at 885 (dismissing nearly identical claim for breach of implied covenant).

Even if Plaintiff's breach claim was not foreclosed by the contract itself, Plaintiff would not be able to rely on the agreement to seek money damages. Section 10 of the Terms of Service provides:

> IN NO EVENT SHALL YOUTUBE . . . BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM ANY . . . (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM OUR SERVICES, . . . AND/OR (V) [sic] ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF ANY CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES.

Adam Decl. Ex. 1 § 10. This provision is fully enforceable under California law. *Accord Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 147 Cal. Rptr. 3d 634, 641-42 (Cal. Ct. App. 2012) (limitation-of-liability clauses like Section 10 "have long been recognized valid in California" (citation omitted)). Indeed, courts—including both the California Court of Appeal and the Ninth Circuit—have repeatedly enforced this same provision to dismiss similar breach of implied covenant claims brought by YouTube users. *Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219, 225

(Cal. Ct. App. 2015); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd*, --- F. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018).

### F.     Plaintiff's "Claim" for a Permanent Injunction Should Be Dismissed

Plaintiff's final cause of action—for a permanent injunction—is frivolous. "[I]njunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 862-63 (E.D. Va. 2016) (citation omitted); *see also Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action.").

### CONCLUSION

For these reasons, Plaintiff's Complaint should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a) or dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for improper venue pursuant to 12(b)(3), and pursuant to 12(b)(6), based on YouTube's immunities under the First Amendment and Section 230(c) and for failure to state a viable cause of action under federal or state law.

Dated: January 25, 2019

 /s/ *Veronica Ascarrunz*
Veronica Ascarrunz (VSB No. 67913)
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
Telephone: (202) 973-8843
Facsimile: (202) 973-8899
vascarrunz@wsgr.com

Brian M. Willen, admitted *pro hac vice*
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

*Attorneys for Defendants YouTube, LLC and Google LLC*

## CERTIFICATE OF SERVICE

I certify that on the 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Steven Scott Biss
300 West Main St
Ste 102
Charlottesville, VA 22903
804-501-8272
Fax: 202-318-4098
Email: stevenbiss@earthlink.net

  /s/ Veronica S. Ascarrunz
Veronica S. Ascarrunz (VA Bar No. 67913)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street NW, Fifth Floor
Washington, D.C. 20006-3814
Telephone: (202) 973-8800
Fax: (202) 973-8899
vascarrunz@wsgr.com

*Attorney for Defendants*
*YouTube, LLC and Google LLC*