IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DAVID SEAMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-833-HEH |
| | ) | |
| | ) | |
| YOUTUBE, LLC | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER OR DISMISS

Plaintiff, David Seaman ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to transfer or dismiss [*ECF No. 13*] filed by defendants, YouTube, LLC ("YouTube") and Google, LLC ("Google") (YouTube and Google are collectively referred to as the "Defendants").

## I.  INTRODUCTION

This is an action about censorship and discrimination by the owners of the World's largest public square and forum for video-based speech, expression and association.  Plaintiff is a journalist who published 100's of videos on his YouTube channel over the course of many years.  None of his videos was censored.  By February 2018, almost 162,000 viewers subscribed to Plaintiff's channel.  Plaintiff earned substantial income from these subscriptions.  Plaintiff's hard work and perseverance as a content creator caught the eye of YouTube's CEO, Susan Wojcicki, who advised Plaintiff

in a letter that what he had accomplished "can't be taken away from you."  In late 2017, everything changed when Google and YouTube began to censor and systematically purge conservative and independent viewpoints from the public platform.  Plaintiff suffered repeated violations of his First Amendment rights, his channel was terminated, his videos were permanently deleted, and he was falsely and publicly accused by YouTube of "violation of YouTube's Terms of Service", "severe violations of our Community Guidelines on Harassment and Cyberbullying", "predatory behavior", "stalking", "threats", "harassment", "bullying" and "intimidation". [*Complaint, ¶¶ 1-7, 13*].

On December 4, 2018, Plaintiff commenced this action against YouTube and Google alleging (1) that YouTube and Google violated Plaintiff's First Amendment rights [*Complaint, ¶¶ 46-63*], (2) that YouTube and Google, as common carriers, engaged in unjust and unreasonable discrimination against Plaintiff [*Id., ¶¶ 64-71*], (3) that Google and YouTube have restrained and restricted Plaintiff's free speech and free publication of sentiments in violation of the Virginia Constitution [*Id., ¶¶ 72-78*], (4) that YouTube defamed Plaintiff after it terminated his account by publishing false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false [*Complaint, ¶¶ 79-85*], (5) that Google and YouTube violated the Virginia Consumer Protection Act [*Id., ¶¶ 86-92*], (6) that Google and YouTube materially breach the Terms of Service and Community Guidelines and the covenant of good faith and fair dealing when, *inter alia*, they censored Plaintiff's speech, views and idea [*Id., ¶¶ 93-97*], and (7) that Google and YouTube should be permanently enjoined to restore his channel and the videos published on his channel.

The matter is before the Court on Defendants' motion to transfer or dismiss.[1]  For the reasons stated below, Defendants' motion should be denied.

## II.  PRINCIPLES OF LAW AND ARGUMENT

### A.   *Virginia Is A Proper Forum For This Action*

Title 28 U.S.C. § 1391 governs the venue in all civil actions brought in the District Courts of the United States.  Pursuant to § 1391(b)(1), a civil action may be brought in a judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located."  This action was properly brought in the District Court for the Eastern District of Virginia, a judicial district in which both YouTube and Google reside. *28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").*

### 1.   *Plaintiff's Allegations*

The Complaint contains a detailed description of Google and YouTube's ubiquitous presence in Virginia and elsewhere over the entire Planet. [*Complaint, ¶¶ 9, 22-23*].  Specifically, Plaintiff alleges that (a) YouTube is a leading online platform for creating, developing, uploading, searching for, viewing and sharing videos with, upon information and belief, millions of users in Virginia, (b) Google is authorized to transact

---

[1]       In their memorandum in support of motion [*ECF. No. 15, pp. 1, 21*], Defendants take issue with Plaintiff's factual allegations.  They argue that Plaintiff's allegations of censorship and discrimination are "baseless" and that "YouTube took action not because of Plaintiff's politics but because his videos repeatedly violated YouTube's Community Guidelines."  These admitted factual disputes demonstrate that Defendants' motion to dismiss should be denied.

business in Virginia, and, in fact, maintains its registered agent in the City of Richmond within in the Eastern District, (c) millions of Virginians, upon information and belief, have an account with Google and use one or more Google products, (d) YouTube and Google engage in continuous and systematic business in Virginia from which they derive enormous revenue and profit, and (e) Virginia, and the nation as a whole, has a supremely important interest in ensuring that our national dialogue remains uninhibited and robust, and that the traditional freedom of individuals with unpopular views to speak in public forums is upheld. [*Complaint, ¶¶ 15, 16, 17, 20, 52*].

Plaintiff's allegations, accepted as true, establish that the Defendants are subject to the Court's personal jurisdiction. Accordingly, the Defendants are deemed to reside in Virginia and venue is proper.

**B.**   **This Action Should Not Be Transferred To California**

Title 28 U.S.C. § 1404(a) provides that for the "convenience of the parties and witnesses" and "in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought."  Courts must answer two questions to resolve motions under this provision: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003); *see also Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 889 (E.D. Va. 2015).

Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)

(internal citation and quotation marks omitted).  In deciding whether to exercise this discretion, District Courts typically consider a number of factors, including: (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 631 (E.D. Va. 2006).  While each of these factors are entitled to weight, the principal factors to consider are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice. *Id.* at 632 (quoting *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005)); *see id. Heinz Kettler GmbH & Co. v. Razor USA, LLC*, 750 F.Supp.2d 660, 667 (E.D. Va. 2010).  No single factor is dispositive in the transfer analysis, which is highly fact-dependent. *Samsung Elecs.*, 386 F. Supp. 2d at 716.

The party seeking transfer bears the "heavy burden of showing that the balance of interests weighs strongly in [its] favor in a motion to transfer." *Arabian v. Bowen*, 966 F.2d 1441, 1992 WL 154026, at *1 (4th Cir. 1992) (unpublished opinion) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)); *Global Touch Sols.*, 109 F. Supp. 3d at 890 (the movant "bears the burden of proving that the circumstances of the case are strongly in favor of transfer") (internal quotations omitted).  Thus, "transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other." *Global Touch Sols.*, 109 F. Supp. 3d at 890 (internal quotations omitted).

When reviewing a motion to transfer under § 1404(a), the court must view all facts in the light most favorable to the party opposing transfer. *Tharpe v. Lawidjaja*, 2012

WL 5336208, at *1 (W.D. Va. 2012) ("[G]iven that Defendant bears a heavy burden in opposing the plaintiff's chosen forum, and the strong presumption in favor of the plaintiff's choice of forum, I will review the facts in the light most favorable to the plaintiff.") (internal citations and quotation marks omitted).

### 1.   *Plaintiff's Choice of Forum*

The first factor in the transfer analysis is the Plaintiff's choice of venue.  In this case, Plaintiff chose Virginia.  "That choice is typically entitled to 'substantial weight,' especially where the chosen forum … bears a substantial relation to the cause of action." *Heinz Kettler*, 750 F.Supp.2d at 667 (quoting *Koh*, 250 F.Supp.2d at 633)); *Ion Bean Applications S.A. v. Titan Corp.,* 156 F.Supp.2d 552, 563 (E.D. Va. 2000) (in general, a plaintiff's choice of forum is given "great deference"); *id. General Creation, LLC v. Leapfrog Enterprises, Inc.*, 192 F.Supp.2d 503, 505 (W.D. Va. 2002).

In this case, Plaintiff chose Virginia because he had a significant following in Virginia and because he suffered a loss of all his Virginia subscribers and damage to his reputation in Virginia as a result of YouTube and Google's publication of false and defamatory statements.  While the Eastern District of Virginia is not Plaintiff's home forum, neither is California.  Accordingly, the first factor – Plaintiffs' choice of forum – weighs against transferring the case to California.

### 2.   *Convenience of the Parties*

The second factor in the analysis is the convenience of the parties. *Eastern Scientific Marketing v. Tekna–Seal Corp.*, 696 F.Supp. 173, 180 (E.D. Va. 1988) (convenience to parties alone will rarely justify transfer, particularly where transfer would merely "shift the balance of inconvenience" from one side to the other).

Here, a transfer to California would merely "shift the balance of inconvenience" to the Plaintiff. *See VS Techs., LLC v. Twitter, Inc.*, 2011 WL 11074291, at * 7 (E.D. Va. 2011) ("transfer is inappropriate where it robs a plaintiff of his chosen forum and merely shifts the balance of inconvenience from defendant to plaintiff.").   Significantly, YouTube and Google – unlike Plaintiff – are financial behemoths.  They are highly sophisticated business entities that do substantial business throughout Virginia, including here in the Eastern District.  YouTube and Google have not demonstrated that it will be difficult in any way to transport, transmit electronically, access or produce any necessary electronic or documentary evidence in Virginia. *See, e.g., Titan Atlas Mfg. Inc. v. Sisk*, 2011 WL 3365122, at * 17 (W.D. Va. 2011) (noting that "in modern litigation, documentary evidence is readily reproduced and transported from one district to another" and finding defendants failed to demonstrate that their documentary evidence would be so voluminous as to create a great burden on them).

Accordingly, this factor does not strongly weigh in favor of transferring the case to California.  Indeed, it militates in favor of keeping the case in Virginia.[2]

### 3.  *Witness Convenience and Access*

The third factor is witness convenience and access.  Courts have recognized that this factor is "of considerable importance" in the transfer analysis. *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F.Supp.2d 708, 718 (E.D. Va. 2005).  As a general matter,

---

[2]    Alphabet's 2018 Annual Report on Form 10-K filed with the Securities and Exchange Commission demonstrates that Defendants are financial juggernauts. [*See* https://abc.xyz/investor/static/pdf/20180204_alphabet_10K.pdf?cache=11336e3]. Unlike the Plaintiff, whose business was wiped out by the Defendants and who would be required to obtain legal counsel and travel to California, neither YouTube nor Google would be inconvenienced in the slightest by having to litigate this matter in Virginia.  The Court should take the gross inequality of the parties' positions into account in determining whether to transfer venue.

however, "a distinction is drawn between party and non-party witnesses." *Id.* "[C]ourts have repeatedly emphasized that in considering whether to transfer a case under 28 U.S.C. § 1404(a), the inconvenience to a party witness is not afforded the same weight as the inconvenience to non-party witnesses." *USA Labs, Inc. v. Bio–Engineered Supplements & Nutrition. Inc.*, 2009 WL 1227867, at *4 (E.D. Va. 2009). While party witnesses are presumed to be more willing to testify in a different forum, there is no such presumption for non-party witnesses. *Samsung*, 386 F.Supp.2d at 718. Moreover, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.". *Koh*, 250 F.Supp.2d at 626.

Defendants offer no evidence that litigating this action in Virginia would be inconvenient for any witness.[3] *See Wenzel v. Knight*, 2015 WL 222179, at * 3 (E.D. Va. 2015) ("Rather than specify witnesses and the materiality of their testimony, the defendants make a fleeting reference to David Lerner Associates and a non-specific assertion that 'many non-party witnesses are located' in the Eastern District of New York."). Defendants also do not indicate that witnesses cannot travel to Virginia or that videotape depositions will not suffice. *See Mullins v. Equifax Info. Servs.*, 2006 WL 1214024, at * 8 (E.D. Va. 2006) ("[T]he moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction.") (internal quotation marks omitted).

---

[3]     Where "the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum ... transfer is inappropriate because the result of transfer would serve only to shift the balance of inconvenience." *Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1258 (E.D. Va. 1988).

And, "merely asserting that a witness lives outside the subpoena power of the court is not enough to tip the scales in favor of transfer." *Rockingham Precast, Inc. v. American Infrastructure-Maryland, Inc.*, 2011 WL 5526092, at * 4 (W.D. Va. 2011); *Mullins*, 2006 WL 1214024, at *8 ("Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process."). Again, "[w]ithout evidence that these witnesses are unwilling to testify voluntarily, this factor becomes less important." *Rockingham Precast, Inc.*, 2011 WL 5526092, at *4. Although live testimony is the preferred mode of presenting evidence, videotaped depositions often are sufficient. *Mullins*, 2006 WL 1214024, at *8. "Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical." *Id.* In this case, Defendants make no attempt to argue that video depositions would be inadequate.

The third factor does not strongly weigh in favor of transferring the case to California.

### 4. *Interests of Justice*

The final factor in the transfer analysis is the interest of justice, which "encompasses public interest factors aimed at systematic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F.Supp.2d 627, 635 (E.D. Va. 2006) (internal citation and quotation marks omitted). Relevant considerations include: the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of an unfair trial, the ability to join other parties, the possibility of

harassment, the pendency of a related action, and the interest in having local controversies decided at home. *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F.Supp.2d 991, 996 (E.D. Va. 2011); *Heinz Kettler*, 750 F.Supp.2d at 670; *Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. at 1260.

The interest of justice would be served by litigating this case in Virginia. First, the local interest in California in vindicating the rights of a citizen of the District of Columbia is low. Second, Google maintains a very large business "campus" in Reston, Virginia [https://about.google/locations/?region=north-america&office=mountain-view] and it announced on February 13, 2019 that it is expanding its billion-dollar presence and operations in Virginia. [https://www.restonnow.com/2019/02/13/breaking-google-doubling-its-n-va-workforce-with-new-offices-and-data-centers-planned/]. Google also made a conscious decision to locate its registered office in the City of Richmond within this District. It's registration to transact business and its business activities in Virginia evidence a substantial uninterrupted connection with Virginia. Unlike the defendant in *Chedid v. Boardwalk Regency Corp.*, 756 F.Supp. at 944-945, Defendants are subject to personal jurisdiction in Virginia. As such, they should expect that Virginia would have a keen interest in their business, policies, practices and publications. Third, although there may be a conflicts of law issue, the Eastern District of Virginia is no stranger to applying the law of other states. In this action, the fact that the law of some other state may apply does not tip the scales in favor of transfer. *See T. and B. Equipment Co., Inc. v. RI, Inc.*, 2015 WL 5013875, at * 5 (E.D. Va. 2015) (denying motion to transfer, where defendant asserted that transfer was appropriate because it was domiciled in New York and had its principal place of business in New York, and the contract at issue was governed by New

York law).  Finally, the "relative docket conditions" of the Eastern District of Virginia and California do not favor transfer to New York. *See Wenzel*, 2015 WL 222179, at * 5. Dockets in California federal courts are far slower and more clogged with cases than dockets in the Eastern District of Virginia and cases reach trial in the Eastern District of Virginia almost three (3) times faster than those in California federal courts. *www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1*. This Court can afford complete relief to the parties before it without the cost, expense and probable delay attenuated by a transfer.

Viewing the record in the light most favorable to Plaintiff, it cannot be said that the scales tip strongly in favor of transfer to California.

> **5.** **_The Contractual Venue Provision Does Require Transfer_**

Buried in the Terms of Service drafted by YouTube is the following statement:

> "Any claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California."

[*ECF No. 15-1 ("Adam Dec."), Ex. 1, § 14*].

This forum selection clause, which was effectively concealed from Plaintiff, does not require transfer of this case to California.  First, it should be noted that the forum selection clause only applies to disputes between "you and YouTube".  It is not applicable to Plaintiff's claims against Google.  Second, the clause is ambiguous in its scope, as it only applies to claims or disputes that arise "from the Service".  The phrase "from the Service" could mean anything, including a routine service interruption.  It is a cardinal principle of Virginia law that in interpreting a contract, the fact finder "should resolve any doubts about the meaning of a word or phrase against the party who prepared,

supplied or inserted the language used in the contract." *Virginia Model Jury Instructions 45.310* (Construction Against the Drafter); *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 291, 504 S.E.2d 849 (1998) (in the event of an ambiguity in the written contract, it is well-settled that such ambiguity must be construed against the "drafter of the agreement.") (citing *Mahoney v. NationsBank of Virginia, Inc.*, 249 Va. 216, 222, 455 S.E.2d 5 (1995)).  Applying the well-settled law, the Terms of Service should be strictly construed against YouTube.  This case involves federal and state claims that have nothing to do with the quality of the "Service" provided by YouTube.  Third, the forum selection clause is unconscionable, unfair, unreasonable, and is affected by fraud and unequal bargaining power.  It should not be enforced against Plaintiff. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); Restatement (Second) of Conflict of Laws (1988 Revisions) § 80 (Supp.1989).  The Terms of Service is an unconscionable adhesion contract, forced upon users of Google products.  "A standard-form contract prepared by one party, to be signed by another party in a weaker position" is referred to as an "adhesion contract." *Black's Law Dictionary* 390 (10th ed. 2014).  A court may take into consideration that a contract is one of adhesion in determining whether a contractual provision is unconscionable.  "Unconscionability is concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances." *Philyaw v. Platinum, Enters.,* 54 Va. Cir. 364, 367 (2001).  A contract is unconscionable "if no person in his senses would make it on the one hand and no fair and honest person would accept it on the other." *Id.* (citing *Hwne v. United States,* 132 U.S. 406 (1889)).  Here, the forum selection clause is intrinsically unfair to Plaintiff, forcing Plaintiff to incur unsustainable expense just to get a day in Court.  Plaintiff did not bargain for this.  In this

case, the forum selection clause is also affected by fraud since it was intentionally buried in the Terms of Service.  There can also be no dispute that the parties are of completely unequal bargaining power.  Plaintiff had no ability to negotiate with YouTube and, indeed, there is no other comparable service to the YouTube public forum.  Plaintiff had no choice and did not "select" in any meaningful sense of the word a California forum for the resolution of any disputes that arose "from the Service".  Finally, Virginia has a great public interest in censorship of a public square that is used by millions of Virginians, especially where, as here, the monopoly that controls that public square is registered to transact business in Virginia and engages in billion dollar deals in Virginia.

**C.**      ***Defendants Are Subject To Personal Jurisdiction In Virginia***

Once a defendant has challenged the existence of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction. *Mylan Labs. Inc. v. Akzo. N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).  Where, as here, the Court addresses the question on the basis only of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima face showing of a sufficient jurisdictional basis to survive the challenge. *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted).  Under such circumstances, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Id.* (citations and quotations omitted).  "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL

1225620, at *1 (E.D. Va. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

In order for a Court to exercise personal jurisdiction over a defendant, the exercise of that jurisdiction must both be authorized by state law and comport with the Due Process Clause of the Fourteenth Amendment. *Id.* The exercise of jurisdiction in Virginia is governed by the Commonwealth's long-arm statute (Va. Code § 8.01-328.1), which has been held to extend personal jurisdiction to the full extent permitted by Due Process. *Id.*; *Roche v. Worldwide Media, Inc.*, 90 F. Supp. 2d 714, 716 (E.D. Va. 2000). Since Virginia's long-arm statute is co-extensive with the strictures of Due Process, Courts collapse the two-part analysis into one inquiry. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'") (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996)); *see Reynolds Metals Co. v. FMALI. Inc.*, 862 F. Supp. 1496, 1498 (E.D. Va. 1994) (citing *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1981)).

Plaintiff alleges that the Defendants transact business in Virginia. Accordingly, the inquiry becomes whether the Defendants maintain sufficient minimum contacts with Virginia so as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The requirements of the Due Process clause can be met through establishing general jurisdiction. General jurisdiction exists, even where a claim does not

arise from a defendant's interactions with the state, where the defendant has sufficient continuous and systematic contacts with the state to satisfy Due Process. *Id.* General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [her] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Plaintiff's allegations, accepted as true, demonstrate that YouTube and Google are subject to general jurisdiction in Virginia. Defendants' contacts with Virginia are continuous and systematic. As evidenced by their stated expansion plans, Defendants conduct a billion-dollar business in Virginia. *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F.Supp.2d 483, 497 (E.D. Va. 2003) ("the Court is convinced that [Defendant] Continental transacted a fair amount of business in Virginia and derived substantial revenue therefrom").[4]

## D.   ***Defendants' Motion To Dismiss Should Be Denied***

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the

---

[4]   "If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Bay Tobacco, LLC*, 261 F.Supp.2d at 492 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

light most favorable to the plaintiff. *See, e.g., Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### 1.     *The First Amendment Does Not Protect Censorship*

In this case, Plaintiff seeks to hold YouTube and Google liable for *violating* the First Amendment, for censoring free speech in the "public square". Defendants did not exercise an "editorial choice". They censored Plaintiff and discriminated against him because of his viewpoints.

Google and YouTube have no free speech or expressive interest whatsoever in banning users from the open platform. The United States Supreme Court expressly rejected the argument that privately-owned public forums (such as YouTube) have "a First Amendment right not to be forced by the State to use [its] property as a forum for

the speech of others." *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 85 (1980).  The

Court in *Pruneyard* affirmed and held that a privately-owned public forum lacked such

First Amendment rights primarily because it was unlikely that the views expressed by

members of the general public would be identified as those of the property's owner. *Id*. at

87.  So too in this case, all videos from individual users are clearly identified with that

user, and it is universally understood that videos reflect the viewpoints of the user, in this

case David Seaman, who uploaded the video, and not Google or YouTube or Eric

Schmidt or Wojcicki. [*Complaint, ¶ 50*].

### 2.    *Section 230 Does Not Shield YouTube and Google*

Section 230(c)(1) of the CDA provides that:

"No provider or user of an interactive computer service[5] shall be treated as the
publisher or speaker of any information provided by another information content
provider."[6]

The Court should reject Defendants' effort to short-circuit the litigation and avoid

a trial on the merits.   First, CDA immunity is an affirmative defense which is

inappropriate for resolution at this stage of a proceeding without evidence.   Second,

Plaintiff does not seek to treat YouTube or Google as a publisher or speaker of

information "provided by another information content provider."   Each of the clams

asserted seeks to impose direct liability on YouTube and Google for ***their own***

---

[5]    The term "interactive computer service" means any information service,
system, or access software provider that provides or enables computer access by multiple
users to a computer server, including specifically a service or system that provides access
to the Internet and such systems operated or services offered by libraries or educational
institutions. *47 U.S.C. § 230(f)(2).*

[6]    The term "information content provider" means any person or entity that
is responsible, in whole or in part, for the creation or development of information
provided through the Internet or any other interactive computer service. *47 U.S.C. §
230(f)(3).*

wrongdoing.  For instance, Plaintiff's defamation claims relate to statements made by YouTube, not statements published on the platform by "another" information content provider.  Third, whether YouTube is a mere "interactive computer service" or an "information content provider" itself, who, through its complex algorithms and decisions to censor conservative viewpoints, is responsible for the creation or development of information provided through the Internet, are issues of fact that cannot be resolved on a motion to dismiss.  Finally, no Court has ever used the CDA to justify censorship and discrimination.  Google and YouTube advocate blanket censorship and seek to extend the CDA way beyond its text and intended meaning.  Their position is patently lawless and offensive.

**E.**     ***Plaintiff States Viable Claims***

      **1.**     ***The Federal And Virginia Constitutions***

In Counts I and III of his Complaint, Plaintiff sets forth the controlling cases and principles of law that impose liability on Defendants for violating the First Amendment and Article I, § 12 of the Virginia Constitution.

Defendants opened up the YouTube platform for use by the public in general.  They created a public square.  Having done so, they are prohibited from violating the constitutional rights of those who use the platform.  Google and YouTube barred and/or restricted Plaintiff's access to an electronic public forum, because of viewpoints expressed by Plaintiff in violation of Plaintiff's rights to freedom of speech under the First Amendment to the United States Constitution.  Because YouTube is freely and openly accessible to the public, Google and YouTube's actions in banning Plaintiff and

other similarly-situated users constitutes "state action" for purposes of § 1983 and the Virginia Constitution.

### 2.    *Common Carrier Liability*

In Count II of his Complaint, Plaintiff alleges that Google and YouTube *are* common carriers. [*Complaint, ¶ 68*].  Plaintiff alleges why they are common carriers.

Whether YouTube is an "information service", as Defendants argue in their opposition, is an issue of fact that cannot and should not be resolved on a motion to dismiss.

### 3.    *Defamation Per Se*

The elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013).

At common law, words that are actionable as defamation *per se* include those which impute to a person an "unfitness to perform the duties of a job or a lack of integrity in the performance of the duties", and those which prejudice a person in his profession or trade. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981)).

In paragraphs 6 and 7 of his Complaint, Plaintiff identifies the actionable statements that were published by YouTube.  They include false accusations that Plaintiff violated YouTube's Terms of Service, that Plaintiff committed "severe violations of our Community Guidelines on Harassment and Cyberbullying", and engaged in "predatory behavior", "stalking", "threats", "harassment", "bullying" and "intimidation".

Viewed together and in context, YouTube's statements accuse Plaintiff of misconduct well-beyond a "breach of conduct" and that would easily prejudice Plaintiff in his profession as an investigative journalist.  At this stage, the allegations must be taken in the light most favorable to Plaintiff and they most certainly paint Plaintiff in an odious light.

### a.    *Publication*

A defamatory statement is deemed published, or "made" by the defendant, whenever it is communicated to and understood by a person other than the Plaintiff. Publication may be proven by direct or circumstantial evidence.  The Plaintiff need not identify the person to whom the defamatory words were published, and need not place in evidence testimony from a third party regarding what the person heard and understood. *Food Lion, Inc. v. Melton*, 250 Va. 144, 151, 458 S.E.2d 580 (1995) (in order to establish prima facie evidence of publication, "a plaintiff is not required to present testimony from a third party regarding what that person heard and understood, or to identify the person to whom the defamatory words were published.  Instead, a plaintiff may prove publication of defamatory remarks by either direct or circumstantial evidence that the remarks were heard by a third party who understood these remarks as referring to the plaintiff in a defamatory sense."); *Thalhimer Bros v. Shaw,* 156 Va. 863, 871, 159 S.E. 87 (1931) (same).

In paragraphs 6, 7 and 8 of his Complaint, Plaintiff alleges publication by YouTube on its website and in emails.  This is sufficient.

4. ***The Virginia Consumer Protection Act Claim***

Upon review of the arguments made in Defendants' memorandum, Plaintiff will withdraw claim under the Virginia Consumer Protection Act.

5. ***Breach of Contract***

The elements of a breach of contract action are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610 (2004).

In this case, Plaintiff alleges the existence of a contract, YouTube's violation of that contract, and resulting damage. Paragraph 96 of the Complaint states that:

> 96. Google and YouTube materially breached the Terms of Service and Community Guidelines and the covenant of good faith and fair dealing by (a) censoring David because of his political views, thoughts, speech and expression, (b) secretly changing algorithms so as to cause David's videos to be automatically flagged by Google's computers, (c) failing to actually review David's videos to determine whether the videos in any way violated the Community Guidelines, (d) falsely stating that a review had taken place and that David's videos violated the Community Guidelines, (e) assigning strikes to David's videos, and (f) terminating David's account and banning him from YouTube.

Contrary to Defendants' suggestion, the Terms of Service and Community Guidelines do not, directly or indirectly, authorize Google and YouTube to censor users or to engage in any of the wrongdoing specified in paragraph 96.

Section 10 of the Terms of Service does not absolve Google and YouTube of liability for damages. Viewed in proper context, this section would not apply to damages

caused by Google/YouTube's own material breaches.  Such an interpretation of the Terms of Services would run counter to logic and would permit Google/YouTube breach at will, which would be a per se violation of public policy.

 **6.** ***Prayer for Injunctive Relief***

To the extent that injunctive relief is only a remedy for Google and YouTube's constitutional violations and breaches, and not a separate cause of action, Plaintiff would request that Count VI be recast as part of Plaintiff's request for relief.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion to transfer or dismiss this action.


DATED:        February 13, 2019


 DAVID SEAMAN


 By:     */s/ Steven S. Biss*
  Steven S. Biss (VSB # 32972)
  300 West Main Street, Suite 102
  Charlottesville, Virginia 22903
  Telephone:      (804) 501-8272
  Facsimile:      (202) 318-4098
  Email:          stevenbiss@earthlink.net

  *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Defendants and all interested parties receiving notices via CM/ECF.


By:    */s/Steven S. Biss*
       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:    (804) 501-8272
       Facsimile:    (202) 318-4098
       Email:     stevenbiss@earthlink.net

       *Counsel for the Plaintiff*