# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| **DAVID SEAMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:  3-18-cv-00833-HEH** |
| | ) | |
| **YOUTUBE, LLC and GOOGLE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS

Veronica Ascarrunz (VSB No. 67913)
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
Telephone: (202) 973-8843
Facsimile: (202) 973-8899
vascarrunz@wsgr.com

Brian M. Willen, admitted *pro hac vice*
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Attorneys for Defendants YouTube, LLC
and Google LLC

Dated: February 26, 2019

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.      PLAINTIFF OFFERS NO BASIS FOR AVOIDING TRANSFER
           UNDER THE GOVERNING FORUM-SELECTION PROVISION ................... 2

          A.      Under Section 1404 and *Atlantic Marine*, the Forum-Selection
                  Clause in the YouTube Terms of Service Requires Transfer .................... 2

                1.      The Parties' Forum-Selection Agreement Is Valid and
                        Enforceable ................................................................................. 3

                2.      Public Interest Factors Do Not Overwhelmingly Favor
                        Transfer ....................................................................................... 5

          B.      In the Alternative, the Court Should Dismiss this Case for Lack of
                  Personal Jurisdiction and Venue .................................................................. 6

    II.     PLAINTIFF CANNOT OVERCOME THE FIRST AMENDMENT AND
           SECTION 230 OF THE CDA ......................................................................... 9

          A.      The First Amendment Bars Plaintiff's Claims............................................ 9

          B.      Section 230 of the CDA Bars Plaintiff's Claims ..................................... 11

    III.    PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION.................. 14

          A.      Plaintiff Cannot Save His Free Speech Claims Under the First
                  Amendment and Virginia Constitution...................................................... 14

          B.      Plaintiff Cannot Save His Claim Under the Federal
                  Telecommunications Act ........................................................................... 15

          C.      Plaintiff Cannot Save His Defamation *Per Se* Claim .............................. 15

          D.      Plaintiff Cannot Save His Breach of Contract Claim .............................. 18

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

*Adhikari v. KBR, Inc.*,
No. 1:15-cv-1248, 2016 WL 4162012 (E.D. Va. Aug. 4, 2016) .........................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................15

*Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013)................................................................................................2, 3, 5, 6

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .........................................................................................12

*Bartholomew v. YouTube, LLC*,
17 Cal. App. 5th 1217 (2017) ..........................................................................................17

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
261 F. Supp. 2d 483 (E.D. Va. 2003) ................................................................................8

*Biltz v. Google, Inc.*,
No. CV 18-00059 DKW, 2018 WL 3340567 (D. Haw. July 6, 2018) ................................4

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ..........................................................................................7

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991)..........................................................................................................4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................................2, 7, 8

*Darnaa, LLC v. Google Inc.*,
236 F. Supp. 3d 1116 (N.D. Cal. 2017) ....................................................................18, 19

*Darnaa, LLC v. Google LLC*,
--- F. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018)..........................................4

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
518 U.S. 727 (1996)........................................................................................................11

*Davison v. Facebook, Inc.*,
No. 1:18-cv-1125 (AJT/TCB) (E.D. Va. Feb. 26, 2019)...................................................14

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....................................................................................11, 13

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007) ................................................................................5

*Fleming v. Moore,*
    275 S.E.2d 632 (Va. 1981)................................................................................17

*Food Lion, Inc. v. Melton,*
    458 S.E.2d 580 (Va. 1995)................................................................................16

*Franklin v. Facebook, Inc.,*
    No. 1:15-cv-00655-LMM, 2015 U.S. Dist. LEXIS 159891
    (N.D. Ga. Nov. 24, 2015)....................................................................................5

*Frazier v. First Advantage Background Servs. Corp.,*
    No. 3:17CV30, 2018 WL 4568612 (E.D. Va. Sept. 24, 2018) ...........................7

*Gonzalez v. Google, Inc.,*
    282 F. Supp. 3d 1150 (N.D. Cal. 2017) ......................................................12, 13

*Goodyear Dunlop Tires Operations, SA v. Brown,*
    564 U.S. 915 (2011)........................................................................................7, 8

*Green v. Am. Online (AOL),*
    318 F.3d 465 (3d Cir. 2003)..............................................................................12

*Handy v. Johnson & Johnson,*
    No. 3:17-CV-274-JAG, 2017 WL 6343792 (E.D. Va. Dec. 12, 2017) ...............8

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.,*
    515 U.S. 557 (1995)..........................................................................................10

*In re Kanazeh,*
    No. 1:09mc47, 2010 WL 364565 (E.D. Va. Jan. 29, 2010) ..............................16

*James v. Bailey,*
    No. 3:15CV519, 2017 WL 193494 (E.D. Va. Jan. 17, 2017)..............................7

*Kimzey v. Yelp! Inc.,*
    836 F.3d 1263 (9th Cir. 2016) ..........................................................................12

*Klayman v. Zuckerberg,*
    753 F.3d 1354 (D.C. Cir. 2014) ........................................................................11

*La'Tiejira v. Facebook, Inc.,*
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ..............................................................10

*Levan v. Capital Cities/ABC, Inc.,*
    190 F.3d 1230 (11th Cir. 1999) ........................................................................11

*Lewis v. YouTube, LLC,*
    197 Cal. Rptr. 3d 219 (2015) ............................................................................18

*McCray v. Ardelle Assocs. Inc.,*
    No. 4:14CV158, 2015 WL 3886318 (E.D. Va. June 23, 2015)..........................16

*Miami Herald Publ'g Co. v. Tornillo,*
    418 U. S. 241 (1974)......................................................................................9, 10

iii

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ................................................................11, 12, 13

*O'Kroley v. Fastcase, Inc.*,
   831 F.3d 352 (6th Cir. 2016) ...............................................................................13

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*,
   387 F. Supp. 2d 564 (E.D. Va. 2005) ..................................................................6

*Pac. Gas & Electric Co. v. Pub. Utils. Comm'n*,
   475 U.S. 1 (1986).............................................................................................9, 10

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..............................................................................................6

*Pragmatus AV, LLC v. Facebook, Inc.*,
   769 F. Supp. 2d 991 (E.D. Va. 2011) ..................................................................6

*Pruneyard Shopping Ctr. v. Robins*,
   447 U.S. 74 (1980)...........................................................................................9, 10

*Scherillo v. Dun & Bradstreet, Inc.*,
   684 F. Supp. 2d 313 (E.D.N.Y. 2010) .................................................................5

*Segal v. Amazon.com, Inc.*,
   763 F. Supp. 2d 1367 (S.D. Fla. 2011) ................................................................4

*Shaheen v. WellPoint Cos.*,
   No. 3:11-CV-077, 2011 WL 5325668 (E.D. Va. Nov. 3, 2011) ........................16

*Song fi, Inc. v. Google Inc.*,
   72 F. Supp. 3d 53 (D.D.C. 2014) .....................................................................3, 4

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ...............................................................17

*Song Fi, Inc. v. Google Inc.*,
   No. 14-cv-05080-CW, 2018 WL 2215836 (N.D. Cal. May 15, 2018).............17

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)................................................................................................3

*Thalhimer Bros., Inc. v. Shaw*,
   159 S.E. 87 (Va. 1931).......................................................................................16

*U.S. Telecom Ass'n v. FCC*,
   855 F.3d 381 (D.C. Cir. 2017)...........................................................................15

*Utah Gospel Mission v. Salt Lake City Corp.*,
   425 F.3d 1249 (10th Cir. 2005) .........................................................................14

*Washington v. Cashforiphones.Com*,
   No. 15-cv-0627-JAH (JMA), 2016 U.S. Dist. LEXIS 192253
   (S.D. Cal. June 1, 2016)........................................................................................5

*Weaver v. Beneficial Fin. Co.*,
  106 S.E.2d 620 (Va. 1959)........................................................................17

*Westlake Legal Grp. v. Yelp, Inc.*,
  599 F. App'x 481 (4th Cir. 2015) ........................................................11, 12

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...............................................................12, 13

*Zhang v. Baidu.com, Inc.*,
  10 F. Supp. 3d 433 (S.D.N.Y. 2014)........................................................10

## STATUTES

28 U.S.C. § 1391(c)(2).....................................................................................7

28 U.S.C. § 1404.................................................................................2, 3, 5, 6

47 U.S.C. § 230...............................................................................................12

## RULES

80 Fed. Reg. 19,738, 19,790 (Apr. 13, 2015) ...............................................15

83 Fed. Reg. 7,852, 7,884 ¶ 152 (Feb. 22, 2018).........................................15

Fed. R. Civ. P. 12(b) ............................................................................9, 11, 19

## MISCELLANEOUS

Restatement (Second) of Torts § 573 cmt. e (Am. Law Inst. 1977)...............17

# INTRODUCTION

In response to the numerous independent grounds for transfer or dismissal of this case, Plaintiff offers little more than bare rhetoric and references to outdated law. That is not enough for this case to proceed. Plaintiff's claims, which seek to compel YouTube to host videos that it has determined violate its content policies, do not belong in this Court, are barred by federal law, and fail on their individual elements.

Plaintiff makes a number of arguments suggesting that Virginia is a convenient and proper forum for this dispute, but he cannot evade the binding forum-selection clause, which requires that these claims be litigated in the Northern District of California. Plaintiff's argument for personal jurisdiction, which does not even reference the holdings of controlling Supreme Court decisions narrowing the standard for exercising general jurisdiction, likewise offers no basis for allowing this Court to adjudicate a dispute brought by a resident of Washington, D.C. against companies neither incorporated, headquartered, nor otherwise "at home" in Virginia.

As for the merits of Plaintiff's claims, Plaintiff offers nothing to overcome their obvious deficiencies. Plaintiff asks the Court to ignore Defendants' rights under the First Amendment and Section 230 of the CDA. But these broad and vital immunities protect YouTube's decision to do exactly what Plaintiff alleges: to enforce its content guidelines and remove Plaintiff's videos from its service. And even beyond these protections, Plaintiff's claims all fail on their own terms. As a matter of law, Defendants are neither state actors nor "common carriers" and thus cannot be held liable under the U.S. or Virginia Constitutions or the federal Telecommunications Act; Defendants did not publish any defamatory statement; and Defendants could not have violated the YouTube Terms of Service by removing Plaintiff's content in exactly the manner that the agreement authorizes.

**ARGUMENT**

**I.     PLAINTIFF OFFERS NO BASIS FOR AVOIDING TRANSFER UNDER THE GOVERNING FORUM-SELECTION PROVISION**

There are two threshold issues in this case: whether the case should be transferred to the Northern District of California based on the forum-selection clause in YouTube's Terms of Service agreement; and whether there is any basis for asserting personal jurisdiction over Google and YouTube in Virginia. On both of those issues, the Supreme Court has, in the past decade, issued directly on-point decisions that make clear that transfer is required and that personal jurisdiction does not exist. *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) (forum-selection agreements are enforceable through motions to transfer under 28 U.S.C. § 1404); *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (corporations only subject to general personal jurisdiction in a limited number of places corresponding to their place of incorporation, headquarters, or where they are similarly "at home"). YouTube's opening brief ("MTD") discussed this controlling authority at length, in explaining why this case should be transferred or dismissed. Plaintiff's opposition inexplicably ignores the Supreme Court's holdings. Plaintiff instead bases his arguments on outdated law, and he offers no viable basis for avoiding transfer or for asking the Court to assert personal jurisdiction.

**A.     Under Section 1404 and *Atlantic Marine*, the Forum-Selection Clause in the YouTube Terms of Service Requires Transfer**

Plaintiff addresses Defendants' transfer motion as if the Supreme Court had never decided *Atlantic Marine*. He spends nearly seven pages of his brief running through the various factors that ordinarily apply on motions to transfer under 28 U.S.C. § 1404: plaintiff's choice of forum; convenience of the parties and witnesses; and the interests of justice. Opp. 4-11. But this approach is exactly what the Supreme Court rejected. Instead, the Court made clear "a valid forum-selection clause . . . should be 'given controlling weight in all but the most exceptional

cases.'" *Atlantic Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)). Where there is such a clause, "the plaintiff's choice of forum merits no weight," and a court faced with a 1404 motion "should not consider arguments about the parties' private interests." *Id.*; *see also id.* at 67 (explaining that "the District Court should not have given any weight to [Plaintiff's] current claims of inconvenience").

      1.  The Parties' Forum-Selection Agreement Is Valid and Enforceable

Notwithstanding *Atlantic Marine*, Plaintiff half-heartedly argues that the parties' forum-selection clause should be ignored based on several theories: (1) the forum-selection clause does not apply to Plaintiff's claims against *Google* (as opposed to YouTube); (2) the clause is ambiguous and may not cover the claims Plaintiff makes here; and (3) the clause is unconscionable and unenforceable. Opp. 11-13. None of these arguments has any merit.

*First*, that the Terms govern disputes with YouTube does not exclude their application to Plaintiff's claims against Google. All of Plaintiff's claims arise from his use of YouTube, and Google's only connection to those claims arises from Google's ownership of YouTube. Compl. ¶ 18. So if the Terms of Service somehow do not apply to the claims asserted here against Google, there simply is no basis for Plaintiff having sued Google (as distinct from YouTube) in the first place. Unsurprisingly, therefore, courts have applied the YouTube Terms of Service to require the transfer of claims brought against both YouTube and Google as its parent company. *See, e.g.*, *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53 (D.D.C. 2014).

*Second*, Plaintiff argues that the clause is ambiguous because it applies to all claims or disputes that arise "from the Service." Although this provision is broad, it is not ambiguous: at a minimum, the plain language of the clause covers any claims between YouTube and its users that relate to the use of the YouTube service. And there certainly is no question about the clause's applicability to this case, in which Plaintiff challenges YouTube's removal of Plaintiff's videos

from YouTube and the suspension of his YouTube channel. Such claims unquestionably arise "from the Service." Plaintiff does not even try to explain why any other conclusion would make sense. Nor could he. *See, e.g.*, *id.* at 63-64 (D.D.C. 2014) (transfering similar claims brought by YouTube user under the same forum-selection clause); *Biltz v. Google, Inc.*, No. CV 18-00059 DKW, 2018 WL 3340567, at *4-5 (D. Haw. July 6, 2018) (holding that the same clause applied to claims based on the plaintiff's use of YouTube).

*Third*, Plaintiff argues that the forum-selection provision is unconscionable and unenforceable because it was embedded in a uniform adhesion contract. He cites no authority that remotely supports this argument. Indeed, the Supreme Court has itself enforced agreements requiring non-arbitrary forums for resolving disputes, even when those provisions were embedded in adhesion contracts printed in fine print on the back of passengers' cruise-ship tickets. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). And courts applying the specific YouTube Terms at issue here—and other online terms of service presented to users in the same way—have consistently upheld and enforced them. *See Song fi*, 72 F. Supp. 3d at 62-63 ("it is not improper for YouTube to require that claims against it be brought in the non-arbitrary forum where it resides"); *accord Biltz*, 2018 WL 3340567, at *5-7 (enforcing the same forum-selection clause); *cf. Darnaa, LLC v. Google LLC*, --- F. App'x ----, 2018 WL 6131133, at *1-2 (9th Cir. Nov. 21, 2018) (finding limitation of liability clause in YouTube Terms of Service not unconscionable because there exist alternatives for posting videos online and because YouTube "has a valid commercial need to limit liability for actions taken to regulate its platform").[1] Users like Plaintiff do not pay to use YouTube's service, and there is nothing

---

[1] Courts have repeatedly rejected similar unconscionability challenges to forum-selection clauses in online terms of service. *See, e.g.*, *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (forum selection clause in Amazon.com marketplace Participation

(continued...)

arbitrary or unfair about designating California—where the company is headquartered—as a forum for litigating with Plaintiff.[2]

## 2. Public Interest Factors Do Not Overwhelmingly Favor Transfer

Because the parties' forum-selection clause is applicable and enforceable, under *Atlantic Marine*, only the public-interest factors are relevant to the Section 1404 analysis. 571 U.S. at 63. And, as "the party acting in violation of the forum-selection clause, [Plaintiff] must bear the burden of showing that public-interest factors *overwhelmingly disfavor* a transfer." *Id.* at 66 (emphasis added). Plaintiff's opposition does not come close to making that showing.

The only public interest factor that Plaintiff meaningfully discusses is the "relative docket conditions" of the Eastern District of Virginia compared to those of the California federal courts. But that vague assertion cannot prevent enforcement of the parties' agreement. As Judge Brinkema has explained, the fact that the Eastern District of Virginia has a fast-paced docket does *not* mean that retaining cases brought by out-of-district plaintiffs serves the interests of justice. To the contrary: "[w]hen a plaintiff with no significant ties to the Eastern District of

---

(...continued from previous page)

Agreement was enforceable and not unconscionable); *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 323-25 (E.D.N.Y. 2010) (same for clause in online purchase agreement); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007) (same for clause in Google AdWords Agreement); *Washington v. Cashforiphones.Com*, No. 15-cv-0627-JAH (JMA), 2016 U.S. Dist. LEXIS 192253, at *13-20 (S.D. Cal. June 1, 2016) (same for clause in online Terms and Conditions); *Franklin v. Facebook, Inc.*, No. 1:15-cv-00655-LMM, 2015 U.S. Dist. LEXIS 159891, at *4-6 (N.D. Ga. Nov. 24, 2015) (same for clause in Facebook Statement of Rights and Responsibilities).

[2] Equally unavailing is Plaintiff's claim that the forum-selection clause was "effectively concealed" from him. Opp. 11. Plaintiff himself quotes from the Terms of Service in the Complaint (Compl. ¶¶ 30, 32, 35), and he seeks to enforce those Terms in asserting a breach of contract claim against Defendants (Compl. ¶¶ 93-97). As he alleges, the Terms, including the forum-selection clause, are readily available on YouTube's publicly accessible website at www.youtube.com/t/terms. Compl. ¶¶ 30, 32, 35. Given that, it makes no sense for Plaintiff to suggest that one of the provisions of that same agreement was somehow "concealed" from him.

Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'" *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) (quoting *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005)) ("Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district. Therefore, transfer would *advance* the interest of justice." (emphasis added)). So too here, Plaintiff's forum-shopping in this District only provides further reason to transfer the case pursuant to the agreement.

But even if relative docket conditions weighed against transfer, they could not carry the day. *Atlantic Marine* made crystal clear that only "extraordinary circumstances" should justify denial of a 1404 motion based on a contractual forum-selection clause. 471 U.S. at 62. A faster docket does not come close to such a showing. And Plaintiff offers nothing else. The fact that federal courts sitting in Virginia are equipped to apply California law (Opp. 10-11), certainly does not mean that Virginia courts would be "at home" with such law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). And, of course, the "local interest in having localized controversies decided at home," *id.* (citation omitted), favors transfer to the home jurisdiction of two of the three parties in this case. Moreover, there is no local interest in having this Court resolve claims brought by a D.C. resident against two corporate defendants who neither are based nor incorporated in Virginia. In short, the public interest factors provide no basis for overriding the parties' agreement to have disputes like these resolve in California.

### B. In the Alternative, the Court Should Dismiss this Case for Lack of Personal Jurisdiction and Venue

YouTube also moved, in the alternative, to dismiss the case for lack of personal jurisdiction and venue. As with his complaint, Plaintiff's opposition confirms that only general

jurisdiction is at issue here and fails to include any facts that indicate that the court should exercise personal jurisdiction. 28 U.S.C. § 1391(c)(2); Opp. 3, 14.

In its motion, YouTube explained that the strict limits articulated by the Supreme Court in *Daimler AG v. Bauman* and *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915 (2011), foreclose any assertion of general personal jurisdiction here (and thus deprive this Court of venue as well). MTD 7-9. Plaintiff's opposition barely even engages with those arguments. He does not even address the controlling legal standard announced in *Daimler* and *Goodyear*. Instead, Plaintiff baldly argues that Google "transact[s] business in Virginia," Opp. 14, and says that general jurisdiction is proper in light of Defendants' "stated expansion plans," *id.* at 15; *see also id.* at 10, 15 (asserting that Google operates a large office in Reston, Virginia and operates a billion dollar business in Virginia).

As an initial matter, these new jurisdictional "facts" cannot affect the Court's analysis because they were not alleged in the Complaint. *See James v. Bailey*, No. 3:15CV519, 2017 WL 193494, at *7 (E.D. Va. Jan. 17, 2017) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss")), *aff'd*, 694 F. App'x 146 (4th Cir. 2017); *Frazier v. First Advantage Background Servs. Corp.*, No. 3:17CV30, 2018 WL 4568612, at *2 n. 6 (E.D. Va. Sept. 24, 2018) (same). But even if they had been pleaded, Plaintiff's assertions would add nothing to make the scattered allegations in the Complaint—such as that many Virginians use YouTube and that Google maintains a registered agent in Richmond—sufficient to plausibly render Defendants "at home" in Virginia. Compl. ¶¶ 16-17. The Supreme Court could hardly have been clearer in *Daimler* that a defendant's "'continuous and systematic' contacts" with—or "substantial, continuous, and systematic course of business" within—a given forum are *not*

- 7 -

enough for general jurisdiction. 571 U.S. at 138. The Court explained that this theory of jurisdiction was "exorbitant," "unacceptably grasping," and would deprive defendants of "some minimum assurance as to where [their] conduct will and will not render them liable to suit." *Id.* at 138-39.

Ignoring all that, Plaintiff relies on a 16-year old—pre-*Daimler* and *Goodyear*—decision from this Court in *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 497 (E.D. Va. 2003) (Hudson, J.). But those superseding Supreme Court rulings have clarified and narrowed the standard for general personal jurisdiction.[3] Indeed, in more recent years, courts in this District have repeatedly concluded that there is no general jurisdiction over even large companies with operations in Virginia, if those companies are neither incorporated here nor have their principal place of business here. *See, e.g.*, *Handy v. Johnson & Johnson*, No. 3:17-CV-274-JAG, 2017 WL 6343792, at *3 (E.D. Va. Dec. 12, 2017) (no general personal jurisdiction in Virginia over Toyota or Johnson & Johnson, companies that are neither incorporated nor headquartered in Virginia), *aff'd*, 724 F. App'x 218 (4th Cir.), and *cert. denied*, 139 S. Ct. 261 (2018); *Adhikari v. KBR, Inc.*, No. 1:15-cv-1248 (JCC/TCB), 2016 WL 4162012, at *7 (E.D. Va. Aug. 4, 2016) (no general jurisdiction in Virginia over a Delaware company headquartered in Texas, even though company leased an office in Virginia). Given that Plaintiff pleads nothing to overcome these or the Supreme Court precedents, the same result is proper here, and the Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction and venue.

---

[3] It is telling that not a single case cited in the opposition's personal jurisdiction argument was decided after *Daimler*. *See* Opp. 13-15. The cases that Plaintiff relies on necessarily do not reflect the current rules set by the Supreme Court to govern the exercise of general personal jurisdiction.

## II.    PLAINTIFF CANNOT OVERCOME THE FIRST AMENDMENT AND SECTION 230 OF THE CDA

Turning to Rule 12(b)(6), Defendants' motion to dismiss explained that the First Amendment and Section 230 provide reinforcing immunities to online services like YouTube for the editorial decisions they make regarding content on their platforms. Plaintiff's limited responses on these points only confirm that his claims cannot go forward.

### A.    The First Amendment Bars Plaintiff's Claims

In response to Defendants' First Amendment arguments (MTD 9-11), Plaintiff relies almost entirely on the Supreme Court's decision in *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 85-86 (1980), which held that a state may limit a shopping mall's power to exclude pamphleteers from its property without violating the First Amendment. But *Pruneyard* has nothing to do with the editorial decisions of publishers or online service providers, and it does not speak to the First Amendment problems created by Plaintiff's claims in this case.

*Pruneyard* was based on the fact that a shopping mall—unlike a newspaper, a parade organizer, or a website—is not engaged in publishing others' speech or directing the content of speech generally. The mall did not offer a platform for individual expression, but instead was a purely commercial enterprise, devoted to selling retail. Its policy "not to permit any visitor or tenant to engage in any publicly expressive activity" (*id*. at 77) was a neutral rule governing land use, not a content-based decision about other people's messages. In enforcing that rule, the mall was not acting as an editor, publisher, or platform for speech, which is why the Court explained that the concerns expressed in *Miami Herald Publishing Co. v. Tornillo*, 418 U. S. 241 (1974), about "intrusion into the function of editors" were "obviously . . . not present." *Pruneyard*, 447 U.S. at 88 (quoting *Tornillo*, 418 U.S. at 258). And indeed it is exactly in this narrow way that *Pruneyard* has subsequently been understood and distinguished. *See, e.g*., *Pac. Gas &*

*Electric Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 12 (1986) (explaining that, in *Pruneyard*, "the owner did not even allege that he objected to the content of the pamphlets; nor was the access right content based"); *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 580 (1995) (distinguishing *Pruneyard* because there the "principle of speaker's autonomy was simply not threatened").

But those concerns about the function of editors are central here. Unlike the shopping mall in *Pruneyard*, YouTube is dedicated to disseminating expressive activity. It operates a "forum for the general public to participate in video-based speech, expression and association." Compl. ¶ 9. And to that end, it promulgates and enforces content-based rules and guidelines prohibiting certain kinds of material from its platform. *See, e.g.*, *id.* ¶ 31. Thus, as Plaintiff's own allegations make clear, YouTube is more like a newspaper (or the parade organizer in *Hurley*) than a shopping mall, and it is covered by the same First Amendment rule that the State "cannot tell a newspaper what it must print." *Pruneyard*, 447 U.S. at 88; *accord La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017) ("online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms").

In a similar vein, Plaintiff's undeveloped argument that YouTube's decision to remove Plaintiff's videos was "censorship," but not an "editorial choice" (Opp. 16) is misguided. The point of First Amendment protection for editors and publishers is to protect their autonomy to make decisions about how to arrange and present third-party speech. Sometimes that results in speech *not* being allowed on a given private platform, just as in *Tornillo* and *Hurley*—or in *Zhang v. Baidu.com, Inc.*, where the search engine defendant refused to include information about certain political topics. 10 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2014); *accord Hurley*, 515 U.S. at 573 (An "important manifestation of the principle of free speech is that one who

chooses to speak may also decide 'what not to say'" (citation omitted)); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1243 (11th Cir. 1999) ("The decision to air the interview of one person but not another is at heart an editorial decision."). The First Amendment right to make those decisions is not—and cannot be—defeated simply by calling it "censorship." To the contrary, "the editorial function is an aspect of 'speech,' and a court's decision that a private party . . . is a 'censor,' could itself interfere with that private 'censor's' freedom to speak as an editor." *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 737-38 (1996) (plurality opinion) (citation omitted).

### B.    Section 230 of the CDA Bars Plaintiff's Claims

As explained in Defendants' opening brief, the First Amendment's protections are reinforced by the immunity afforded by Section 230 of the CDA, which further mandates dismissal of Plaintiff's claims. MTD 11-14. Plaintiff offers four arguments in response, all of which are contrary to established law.

*First*, Plaintiff claims that Section 230 immunity cannot be resolved on a motion to dismiss. This is simply wrong. Opp. 17. "Preemption under the Communications Decency Act is an affirmative defense, but it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). Indeed, the Fourth Circuit has specifically mandated that Section 230 immunity should be resolved "*at the earliest possible stage of the case* because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (emphasis added) (quoting *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc)). Thus, in *Nemet*, and in countless other cases, courts have dismissed cases under Rule 12(b)(6) based on Section 230. *Id.* at 255; *see also, e.g.*, *Westlake Legal Grp. v.*

*Yelp, Inc.*, 599 F. App'x 481 (4th Cir. 2015); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (affirming 12(b)(6) dismissal); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) (same); *Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) (same).

*Second*, Plaintiff argues that Section 230 does not apply here because his claims seek to impose liability on Defendants for "their own wrongdoing." Opp. 17-18. While this may be true of claims that arise from Defendants' own alleged statements, such as Plaintiff's defamation claim (which nonetheless fails, *see* MTD 20-24 & *infra* pp. 15-17), Section 230 unquestionably bars any claim that arises from YouTube's decision to remove Plaintiff's videos from its platform. There is no dispute that those videos were not "created or developed" by Defendants. 47 U.S.C. § 230(c)(1). And decisions about "whether to publish, withdraw, postpone or alter content" are exactly what Section 230 protects. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *accord* MTD 13-14. Plaintiff cites no contrary authority; nor could he. As the Fourth Circuit has explained: "Congress enacted § 230's broad immunity 'to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.' In line with this purpose, § 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Nemet*, 591 F.3d at 258 (quoting 47 U.S.C. § 230(b)(4)).

*Third*, Plaintiff asserts without any explanation or support that Defendants' use of algorithms and editorial decisions somehow renders them "information content providers." Opp. 18. This is not the law. MTD 13. It is well established that a service provider's "provision of neutral tools . . . does not equate to content development under section 230." *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. 2017) (rejecting argument that YouTube's

targeted ad algorithm rendered Google a content provider), *appeal docketed*, No. 18-16700 (9th Cir. Sept. 10, 2018); *see also O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) (interactive service provider does not "develop" content by performing "automated editorial acts on the content"); *Roommates.com*, 521 F.3d at 1167-68 (service provider does not "develop" content under Section 230 merely by "augmenting the content generally"). In short, Plaintiff cannot defeat Section 230 with vague references to algorithms. *Accord Nemet*, 591 F.3d at 258 ("Nemet was required to plead facts to show any alleged drafting or revision by Consumeraffairs.com was something more than a website operator performs as part of its traditional editorial function. It has failed to plead any such facts." (citation omitted)).

*Fourth*, Plaintiff makes the purely rhetorical argument that applying Section 230 to protect Google's decision to remove Plaintiff's content would be "patently lawless and offensive." Opp. 18. Plaintiff's views of the policy merits of Section 230 immunity have no bearing on how the statute should be applied. *Cf. Zeran*, 129 F.3d at 329, 334 (applying Section 230 to dismiss claims brought by plaintiff who had been the victim of severe harassment and ridicule). Indeed, in *Zeran*, the Fourth Circuit specifically embraced Congress's choice "to encourage service providers to self-regulate the dissemination of offensive material over their services." *Id.* at 330-31. As consistently applied by courts in the two decades since it was enacted, Section 230 empowers service providers to determine whether or not to publish content on their platforms. Regardless of whether Plaintiff agrees with it, YouTube's decision that Plaintiff's videos should be removed from its service falls squarely in line with what Congress intended.

### III.     PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION

Beyond these overarching federal immunities, nothing in Plaintiff's opposition brief can change the fact that the Complaint fails to state any viable cause of action.[4]

#### A.     Plaintiff Cannot Save His Free Speech Claims Under the First Amendment and Virginia Constitution

Plaintiff offers no basis to save his claims under the First Amendment and Virginia Constitution, both of which fail for lack of state action. Plaintiff cites no authority—not a single case (or indeed anything else)—in support of his argument that YouTube, a private party, should be treated as a state actor for its editorial decisions regarding the use of its private platform. Plaintiff instead blankly asserts that YouTube, by offering a widely available service that is generally free to use, somehow created a "public square." Opp. 18. That clearly is not the law: to the contrary, "property does not become a public forum simply because a private owner generally opens his property to the public." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1255 (10th Cir. 2005); *accord* MTD 17-18. And, of course, Plaintiff ignores, and does not even try to address or distinguish the unbroken line of cases holding that online services like YouTube are not state actors and cannot be held liable for constitutional claims. MTD 15-16 & n.6; *see also Davison v. Facebook, Inc.*, No. 1:18-cv-1125 (AJT/TCB), slip op. at 9-12 (E.D. Va. Feb. 26, 2019) (dismissing First Amendment claims against Facebook for lack of state action and holding that "Facebook has, as a private entity, the right to regulate the contents of its platforms as it sees fit").

---

[4] Plaintiff has now expressly abandoned his claim under the Virginia Consumer Protection Act of 1977. Opp. 21.

### B.      Plaintiff Cannot Save His Claim Under the Federal Telecommunications Act

Plaintiff likewise offers virtually no defense of his Telecommunications Act claim. As Defendants explained, this claim fails because YouTube and Google are not "common carriers" under the Act. *Id.* at 18-20. Without engaging with any of those legal arguments, Plaintiff says that because his Complaint incants—without any supporting factual allegations—that Defendants are common carriers, this claim survives a motion to dismiss. Not so. It is black-letter law that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And Plaintiff's common carrier allegations are a paradigmatic example of the kinds of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" and are not entitled to a presumption of truth. *Id*. Whether Defendants qualify as common carriers is a question of law, which has been definitively answered in the negative by both the FCC and the D.C. Circuit. *See* Protecting and Promoting the Open Internet, 80 Fed. Reg. 19,738, 19,790 (Apr. 13, 2015) (explaining that "edge providers" cannot be treated as common carriers); Restoring Internet Freedom, 83 Fed. Reg. 7,852, 7,884 ¶ 152 (Feb. 22, 2018) (identifying YouTube as an "edge provider"); *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (explaining that Google and YouTube "are not considered common carriers"). Plaintiff offers no response to this authority, which disposes of his common carrier claim.

### C.      Plaintiff Cannot Save His Defamation *Per Se* Claim

YouTube moved to dismiss Plaintiff's defamation claim on two grounds: (1) Plaintiff failed to allege a statement that was defamatory *per se*; and (2) Plaintiff failed to allege publication of any defamatory statement to any third party. Plaintiff offers no persuasive response on either point.

Plaintiff's Opposition (like the Complaint) conflates two distinct categories of statements: (1) emails sent to Plaintiff; and (2) information posted on YouTube's website. These need to be considered separately, but neither states a claim. As for the emails, they were private communications that YouTube sent to Plaintiff before and after his channel was terminated. Compl. ¶¶ 6-7. In those emails, YouTube provided information about its Community Guidelines enforcement policies, including that YouTube is not a platform for predatory behavior, stalking, threats, harassment, bullying, or intimidation. *Id.* No matter what their content, however, these private emails cannot give rise to a defamation claim. It is black-letter law that the "publication" requirement for defamation is not satisfied by a private communication between the alleged defamer and the allegedly defamed. *See, e.g.*, *Shaheen v. WellPoint Cos.*, No. 3:11-CV-077, 2011 WL 5325668, at *4 (E.D. Va. Nov. 3, 2011) ("The publication element for defamation requires a dissemination of the statement to a third party outside of a privileged context."), *aff'd*, 490 F. App'x 552, 555 n.2 (4th Cir. 2012); *McCray v. Ardelle Assocs. Inc.*, No. 4:14CV158, 2015 WL 3886318, at *6 (E.D. Va. June 23, 2015) (same); *In re Kanazeh*, No. 1:09mc47, 2010 WL 364565, at *6 (E.D. Va. Jan. 29, 2010) (same).[5] Plaintiff's reliance on such communications thus fails to state a claim.

As for what was on the website, Plaintiff alleges just a single statement, which said in its entirety: "This account has been terminated for a violation of YouTube's Terms of Service."

---

[5] Nothing in the two cases Plaintiff cites in his opposition—*Food Lion, Inc. v. Melton*, 458 S.E.2d 580 (Va. 1995), and *Thalhimer Brothers, Inc. v. Shaw*, 159 S.E. 87 (Va. 1931)—casts any doubt on this principle. Those cases stand merely for inapposite points of law about the burden of proof for identifying precisely to whom defamatory statements were communicated, *Food Lion*, 458 S.E.2d at 585, and when statements made to third parties are nonetheless not publications because they were made in a privileged context, *Thalhimer Bros.*, 159 S.E. at 89. They provide no basis for transforming wholly private email communications into defamatory publications.

Compl. ¶ 6. As a matter of law, this statement is not defamatory. Defendants' motion explained that courts have repeatedly rejected defamation claims based on virtually identical statements. MTD 21-22 (citing *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1228 (2017); *Song Fi, Inc. v. Google Inc.*, No. 14-cv-05080-CW, 2018 WL 2215836, at *4 (N.D. Cal. May 15, 2018)). Plaintiff offers no response to this directly on-point authority. But these cases rightly recognize that—in light of the wide variety of reasons why a video could be banned from YouTube—a generic reference to a violation of YouTube's Terms of Service simply is not defamatory. *See Bartholomew*, 17 Cal. App. 5th at 1229-32 (explaining that given the "very breadth" of YouTube's Community Guidelines, a generic reference to a violation "cannot reasonably be understood as imputing any particular wrongdoing" to plaintiff).

In trying to transform YouTube's innocuous general statement into a defamatory accusation, Plaintiff also ignores clear Virginia law. Plaintiff claims that YouTube's statements "easily prejudice Plaintiff in his profession as an investigative journalist" by "paint[ing] Plaintiff in an odious light" (Opp. 20), but it is well settled that this kind of generalized statement does not rise to defamation *per se. See, e.g.*, *Fleming v. Moore*, 275 S.E.2d 632, 636 (Va. 1981); Restatement (Second) of Torts § 573 cmt. e (Am. Law Inst. 1977) ("Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession."). Nor does the assertion that a person breached a contract. *Accord Weaver v. Beneficial Fin. Co.*, 106 S.E.2d 620, 621-22, 625 (Va. 1959).

In short, neither YouTube's private emails nor the generic statement on its website supports a viable defamation claim in this case.

### D.     Plaintiff Cannot Save His Breach of Contract Claim

Finally, Plaintiff's arguments in support of his breach of contract claim fails to save that claim from dismissal. To begin, Plaintiff is wrong to suggest that the YouTube Terms of Service do not authorize YouTube to remove videos or terminate accounts. Indeed, those actions are specifically authorized by Sections 4.J, 6.F, and 7.B of the Terms. *See* Adam Decl. Ex. 1; *accord Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (applying these provisions to dismiss nearly identical claim). In particular, Section 7.B expressly reserves to YouTube the right to "decide whether Content or a User Submission is appropriate and complies with these Terms of Service for violations other than copyright infringement" and to "remove such User Submissions and/or terminate a User's access for uploading such material in violation of these Terms of Service at any time, without prior notice and at its sole discretion." Adam Decl. Ex. 2 § 7.B. Plaintiff cannot evade these provisions by pretending that they do not exist.

Plaintiff is also incorrect to suggest that Section 10 of the Terms of Service does not foreclose any liability for damages under Plaintiff's breach of contract claim. Plaintiff asserts that "[v]iewed in proper context, this section would not apply to damages caused by Google/YouTube's own material breaches." Opp. 21-22. It is entirely unclear what Plaintiff means by "proper context." In fact, the language of the limitation of liability provision is clear, stating YouTube is not liable for "direct, indirect, incidental, special, punitive, or consequential damages whatsoever" where the claim is based on "omissions in any content"—such as the removal of Plaintiff's videos and account from the YouTube Service. Adam Decl. Ex. 1 § 10. And, indeed, as Defendants explained in their opening brief, this very provision has repeatedly been enforced to dismiss similar breach of contract claims brought by other YouTube users. *Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219, 225 (2015); *Darnaa, LLC v. Google Inc.*, 236 F.

Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd*, --- Fed. App'x ----, 2018 WL 6131133 (9th Cir. Nov. 21, 2018). Plaintiff offers no response to this authority.

## CONCLUSION

For these reasons, and those stated in Defendants' Motion to Dismiss, this case should be transferred to the Northern District of California or, in the alternative, dismissed under Rules 12(b)(2), 12(b)(3), and 12(b)(6) (Docket Nos. 13, 14).

Dated: February 26, 2019

 /s/ *Veronica Ascarrunz*
Veronica Ascarrunz (VSB No. 67913)
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, N.W., Fifth Floor
Washington, D.C. 20006
Telephone: (202) 973-8843
Facsimile: (202) 973-8899
vascarrunz@wsgr.com

Brian M. Willen, admitted *pro hac vice*
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

*Attorneys for Defendants YouTube, LLC and Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 26th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

> Steven Scott Biss
> 300 West Main St
> Ste 102
> Charlottesville, VA 22903
> 804-501-8272
> Fax: 202-318-4098
> Email: stevenbiss@earthlink.net

>  /s/ Veronica S. Ascarrunz
> Veronica S. Ascarrunz (VA Bar No. 67913)
> WILSON SONSINI GOODRICH & ROSATI, P.C.
> 1700 K Street NW, Fifth Floor
> Washington, D.C. 20006-3814
> Telephone: (202) 973-8800
> Fax: (202) 973-8899
> vascarrunz@wsgr.com

> *Attorney for Defendants*
> *YouTube, LLC and Google LLC*

- 1 -